995 P.2d 809

**Tani Page HUMBERGER, n/k/a Tani Page Hall, Plaintiff–Appellant,**

v.

**Tod L. HUMBERGER, Defendant–Respondent.**

No. 25172.

Supreme Court of Idaho, Pocatello, September 1999 Term.

Feb. 25, 2000.

John B. Kugler, Pocatello, for appellant.

Hollifield and Bevan, Twin Falls, for respondent.

## ON REVIEW

SILAK, Justice.

This is a review of a Court of Appeals decision concerning a magistrate's order modifying the child support provision of a divorce decree with respect to whether the appellant was voluntarily unemployed, and whether the trial court abused its discretion in calculating the respondent's adjusted gross income. We reverse in part and vacate in part the magistrate's order, and remand the case for further proceedings consistent with this opinion.

### I.

### FACTS AND PROCEDURAL BACKGROUND

#### A. Facts

Appellant Tani Hall (Hall), formerly Tani Humberger, and respondent Tod Humberger (Humberger) were married in December of 1985, and divorced in August of 1987. One child, Brandi, was born to the parties. The divorce decree awarded Hall primary physical custody of Brandi, with Humberger having reasonable rights of visitation. Humberger was ordered to pay $150.00 per month in child support and to maintain medical insurance for the child. Both parties were ordered to split equally medical expenses not covered by insurance. Hall was given the benefit of claiming the child for income tax purposes, and the parties were ordered to pay their own attorney fees.

#### B. Procedural Background

In October of 1995, Hall filed a petition for modification of the divorce decree. In her petition, Hall asserted that Brandi's needs had increased and that her ability to pay support had decreased while Humberger's ability had increased. Thus, Hall claimed that a permanent, material and substantial change of circumstances had occurred and modification was therefore justified pursuant to the Idaho Child Support Guidelines (Guidelines or I.C.S.G.). Hall sought an increase in the amount of child support, modification of the provision in the decree relating to medical expenses unpaid by insurance, and the payment of attorney fees. Humberger filed a response denying his increased ability to pay child support and asserted that Hall was voluntarily unemployed. Humberger agreed to modify the provision of the decree dealing with payment of medical expenses not covered by insurance from equal shares to prorata shares, but disputed Hall's claim for attorney fees and asserted his own request for such fees.

Subsequently, Humberger filed his own petition for modification, seeking to have child support set in accordance with the Guidelines and further requesting that he receive the child dependency exemption. In July 1996, the cross-motions for modification were tried to the magistrate court. Both parties presented exhibits and testimony in support of their motions. At trial, the magistrate accepted the stipulation of the parties to a new visitation schedule and took the child support issues under advisement. The magistrate thereafter issued an order and opinion increasing Humberger's child support obligation from $150.00 per month to $253.00 per month, and ordered each party to pay his or her own attorney fees and costs. The magistrate court further found that Hall was voluntarily unemployed based on her decision to attend college. The magistrate found that Hall had the potential to earn $7.00 an hour based on a 1995 summer job and imputed income to her in the amount of $14,000 a year based on that figure. The

court ordered annual re-evaluations of Humberger's child support obligation due to the unpredictable nature of his employment and income as a journeyman electrician. Humberger was also awarded the child dependency exemption for income tax purposes.

In September 1996, Hall filed a motion for relief to set aside the magistrate court's order on the ground that it was unjust, and also requested the opportunity to present oral argument. The magistrate denied the motion without holding a hearing. Hall appealed to the district court asserting that the magistrate erred in determining the parties' individual incomes, in awarding the tax exemption to Humberger, in denying her request for attorney fees, and in denying her motion for relief from the court's order. The district court affirmed the magistrate's order and opinion. Hall appealed.

In an unpublished opinion, the Court of Appeals affirmed in part and reversed in part the magistrate's decision, remanding the case for further proceedings. *Humberger v. Humberger*, 98.19 ICAR 835 (Idaho Ct.App. Sept. 14, 1998). The Court of Appeals held that: (1) the magistrate erred in concluding Hall was voluntarily unemployed solely on the basis of her full-time educational pursuits, and there was insufficient factual support that Hall could earn $7.00 per hour for fifty weeks a year for purposes of imputing income; (2) the trial court did not abuse its discretion in deducting trade-related expenses from Humberger's gross income; (3) the trial court abused its discretion in awarding Humberger the child dependency exemption without accounting for the benefit in the child support award; (4) the trial court did not err in denying Hall's I.R.C.P. 60(b) motion without holding a hearing; and (5) the trial court abused its discretion in denying Hall's request for attorney fees without making appropriate findings. This Court granted review as to issues (1) and (2) only.

## II.

## ISSUES ON REVIEW

The issues granted for review are as follows:

A. Whether the trial court abused its discretion in determining that Hall was voluntarily unemployed.

B. Whether the trial court erred in deducting trade-related expenses from Humberger's gross income.

## III.

## ANALYSIS

### A. Standard Of Review

 In cases that come before this Court on a petition for review of a Court of Appeals decision, this Court gives serious consideration to the views of the Court of Appeals, but directly reviews the decisions of the trial court. *See Marshall v. Blair*, 130 Idaho 675, 679, 946 P.2d 975, 979 (1997). This Court will not set aside the trial court's findings of fact unless they are clearly erroneous. *See id.* As to questions of law, this Court exercises free review. *See Jensen v. Jensen* 128 Idaho 600, 604, 917 P.2d 757, 761 (1996).

### B. The Trial Court Correctly Determined That Hall Was Voluntarily Unemployed, But Abused Its Discretion In Calculating Her Child Support Obligation.

Hall asserts that the trial court abused its discretion in determining that she was voluntarily unemployed and in disregarding her status as a full-time student. Specifically, Hall argues that because Humberger failed to meet his burden of demonstrating that she was voluntarily unemployed, the trial court erred in imputing income to her on this basis. In addition, Hall argues that the court abused its discretion in failing to set forth the basis for its finding that she was voluntarily unemployed and for refusing to recognize her student income and status pursuant to I.C.S.G. § 6(c)(1)(B).

Hall was employed as a waitress for a cumulative period of ten years, both during her marriage to and after her divorce from Humberger. When Hall lost her job as a waitress and could not find employment sufficient to provide for herself and her two

children,[1] she decided to seek a college degree. Hall testified that she was a full-time student at Idaho State University pursuing a career in vocational education and that she would complete her degree in two years and would thereafter potentially be earning $20,000 to $25,000 per year. Although Hall worked as a survey and drafting technician in the summer of 1995 for $7.00 per hour, she testified that she did not seek employment in the summer of 1996 because she was attending summer school on Tuesday and Thursday nights from 6:00 p.m. to 9:00 p.m., and also participating in a correspondence course from home. Hall testified that from January through May 1996 she attended school Monday through Friday from 8:00 a.m. to 4:00 p.m. She also testified that in the fall of 1996, she had secured a job as a student aide at Marsh Valley High School, where she would work from 8:00 a.m. to 4:00 p.m. Monday through Friday while attending night classes Monday, Tuesday and Thursday nights from 6:00 p.m. to 9:00 p.m. Although Hall was not to be compensated for her work as a student aide, she was to receive credit toward her degree. In 1996, Hall received approximately $2,700 in educational grants.

On the basis of Hall's testimony, the magistrate concluded: "The plaintiff admits to being voluntarily unemployed in order to pursue her education. . . . It is the finding of this court that plaintiff is voluntarily unemployed and has potential income of $7.00 an hour for 50 weeks a year." Hall argues that the trial court disregarded her student status and abused its discretion in determining that she was voluntarily unemployed and imputing full-time draftsman income to her on this basis.

Because there appears to be confusion with respect to which party has the burden of proof in a child support modification proceeding, preliminarily, the Court will address that issue. Hall cites two cases, *Rohr v. Rohr*, 126 Idaho 1, 878 P.2d 175 (Ct.App. 1994), and *Jensen v. Jensen*, 128 Idaho 600, 917 P.2d 757 (1996), which she contends are in conflict regarding the burden of proof in a child support modification action and asks this Court for clarification.

The decision to modify a child support order is a two-step process involving a determination of whether there has been a substantial change of circumstances, and the proper amount of the modification. *See Rohr*, 126 Idaho at 3, 878 P.2d at 177. In *Rohr*, the former wife sought an increase in the amount of child support the former husband was currently paying based upon the child's increased needs and the husband's increased ability to pay. 126 Idaho at 3, 878 P.2d at 177. In deciding that the child support modification was proper, but that the magistrate had erred in its calculation of support allocated to the husband, the Court of Appeals held that "the burden of proof is upon the party seeking the modification." *Id.*

Hall claims the question of burden of proof in a child support modification action is confused by *Jensen*. In that case, a mother, after a change in employment, sought modification of a child support order. Both parents' incomes were over the $70,000 top figure provided for in Section 10(a) of the I.C.S.G. *See Jensen*, 128 Idaho at 602, 917 P.2d at 759. Hall quotes one sentence of the opinion that on its face looks contradictory to *Rohr*, in placing the burden of proof with the respondent rather than the petitioner. That portion of the opinion reads: "The magistrate thereafter erroneously shifted the burden of proof to Carla, requiring Carla to specifically prove the factors set forth in Section 10(c) of the I.C.S.G." *Id.* at 605, 917 P.2d at 762.

This quote is taken out of context by Hall and does not stand for the proposition that the respondent has the burden of proof in a child support modification action. On the contrary, the Court was reversing the magistrate's determination of support based on an error in applying the factors listed in the Guidelines. The Court held that the magistrate erred by applying a cap rather than an evidence-driven standard in determining whether any additional child support above the Guidelines' $70,000 maximum income figure should have been awarded in the modification proceeding. *See id.* Although the

---

1. Hall has a son from a second marriage.

magistrate correctly increased the father's child support payment in accordance with the Guidelines, he erroneously shifted the burden of proof to the mother requiring her to prove specific factors in order to obtain additional support that were already included in Section 10(c) of the I.C.S.G. *See id.* The Court was merely advising the magistrate that he should have analyzed the parents' incomes and the children's additional requirements using the Guidelines, and award additional support accordingly.

■ Therefore, there is no confusion in the law as to the burden of proof in a child support modification action. The burden of proof is on the party seeking the modification. This is true whether the party seeking the modification is seeking to have his or her child support obligation reduced because of a change in circumstance, or whether the party is seeking to have the ex-spouse's support obligation increased. Whoever files the petition seeking the modification has the burden of proof. Thus, in the present case, because Hall filed the petition for modification seeking to have her support obligation decreased due to her status as a full-time student, she had the burden of proving that she was not voluntarily unemployed or underemployed.

In determining whether Hall was voluntarily unemployed, the magistrate relied on Section 6(c)(1) of the I.C.S.G., which provides guidance for determining whether a parent is voluntarily underemployed or unemployed, and if so, whether a trial court should impute income to that parent. Section 6(c)(1) states in pertinent part:

(1) Potential earned income. If a parent is voluntarily unemployed or underemployed, child support shall be based on gross potential income, except that potential income should not be included for a parent that is physically or mentally incapacitated. A parent shall not be deemed *underemployed if gainfully employed on a* full-time basis at the same or similar occupation in which he/she was employed for more than six months before the filing of the action or separation of the parties, whichever occurs first. Ordinarily, a parent shall not be deemed underemployed if the parent is caring for a child not more than 6 months of age. Determination of potential income shall be made according to any or all of the following methods, as appropriate:

(A) Determine. employment potential and probable earnings level based on the parent's work history, occupational qualifications, and prevailing job opportunities and earnings levels in the community.

(B) Where a parent is a student, potential monthly income during the school term may be determined by considering student loans from any source.

I.C.S.G. § 6(c)(1)(A) and (B).

■ We hold that the magistrate was correct in finding that Hall was voluntarily unemployed. As the magistrate correctly noted, Hall admitted to being voluntarily unemployed at the July 1996 hearing on her petition for modification. On cross-examination by Humberger's attorney, Hall was asked specifically if she had sought any employment that summer to which she responded that she had not. Although she was attending summer school, she attended classes only on Tuesday and Thursday evenings from 6:00 to 9:00 p.m. There appears to have been ample time for Hall to have been working even with her summer school classes and home correspondence course. Furthermore, even though Hall had attended school full-time during the spring and intended to attend full-time that fall, this decision was entirely voluntary, as was her election not to seek employment while attending school. Thus, while it is admirable for Hall to seek a college education in order to improve her earning potential and marketability, she is still considered to be voluntarily unemployed under the Guidelines and some income must be attributed to her. Section 6(c)(1)(B) of the Guidelines specifically contemplates that a student parent who does not work is voluntarily unemployed, and that the parent's potential earned monthly income may be calculated by considering student loans for purposes of child support. Although Hall's decision to return to school may eventually benefit her daughter, she is still obligated now for some allocation of support. "The Guidelines are premised on the basic principle that *both*

*parents* should share legal responsibility for supporting their child or children 'in proportion to their Guidelines Income.'" *Noble v. Fisher,* 126 Idaho 885, 888, 894 P.2d 118, 121 (1995). (Emphasis added).

Hall, the party seeking modification, bore the burden of proof regarding her potential earned income. She introduced evidence that she was employed as a waitress for a cumulative period of ten years, both during her marriage to and after her divorce from Humberger. When Hall lost her job as a waitress and could not find employment sufficient to provide for herself and her two children (one child is from a second marriage), she decided to seek a college degree. Hall testified that she was a full-time student pursuing a career in vocational education and that she would complete her degree in two years and would thereafter be earning $20,000 to $25,000 per year. Although Hall worked as a survey and drafting technician in the summer of 1995 for $7.00 per hour, she testified that she did not seek employment in the summer of 1996 because she had secured a job as a student aid at a high school in the fall. As a student aid, Hall testified that she would work from 8:00 am to 4:00 p.m. Monday through Friday while attending night classes Monday, Tuesday and Thursday nights. Although Hall was not compensated for her work as a student aid, she would receive credit towards her degree.

■ On the basis of Hall's testimony, the magistrate concluded that Hall had potential income of $7.00 an hour for 50 weeks a year. Hall asserts that the trial court abused it discretion in imputing full-time draftsman income to her.

We hold that there was insufficient evidence Hall could earn $7.00 per hour for 50 weeks per year based upon a summer job she had as a survey technician. There was no testimony or other proof that Hall would actually be able to obtain year-round full-time employment as a survey technician at $7.00 per hour. Hall was employed in that capacity for only one summer, while she was employed as a waitress for a cumulative ten-year period. We therefore vacate the decision of the magistrate attributing to Hall $7.00 an hour for 50 weeks per year, and

remand for further proceedings. On remand, the magistrate may re-evaluate the evidence, take additional evidence if necessary, and make appropriate findings and conclusions consistent with this opinion in order to determine how much support Hall can provide her daughter. As stated above, because Hall filed the petition for modification, she has the burden of proof in establishing her income potential. The magistrate must then make a determination as to the amount of support allocated to Hall using Section 6(c) of the Guidelines.

## C. The Trial Court Abused Its Discretion In Deducting Work–Related Expenses From Humberger's Gross Income.

■ Hall claims that the trial court abused its discretion in deducting business-related expenses from Humberger's gross income in calculating child support. Specifically, Hall asserts that these expenses did not qualify as business expenses because Humberger neither operated his own business nor was self-employed, the only possible bases by which he could deduct business-related expenses in accordance with the plain language of I.C.S.G. § 6(a)(2). Hall asserts that the magistrate erred when it allowed Humberger to deduct work-related expenses from his gross income which included out-of-pocket travel, lodging, tools and supplies required to carry on his trade as an electrician. We agree.

Section 6(a)(2) of the Guidelines provides: (2) Rents and business income. For rents, royalties, or income derived from trade or business (whether carried on as a sole proprietorship, partnership or closely held corporation), gross income is defined as gross receipts minus ordinary and necessary expenses required to carry on the trade or business or to earn rents and royalties. Excluded from ordinary and necessary expenses under these Guidelines are expenses determined by the court to be inappropriate for determining gross income for purposes of calculating child support. In general, income and expenses from self-employment or operation of a business should be carefully reviewed to

determine the level of gross income of the parent to satisfy a child support obligation. I.C.S.G. § 6(a)(2). Section 6(a)(1) of the Guidelines provides:

(1) Gross income. (I) Gross income includes income from any source, and includes, but is not limited to, income from salaries, wages, commissions, bonuses, dividends, pensions, interest, trust income, annuities, social security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, alimony, maintenance, any veteran's benefits received, education grants, scholarships, other financial aid and disability and retirement payments to or on behalf of a child calculated per Section 11.

Presumably relying on I.C.S.G. § 6(a)(2), the magistrate deducted Humberger's work-related expenses from his gross income, based on IRS Form 2016, entitled "Business Employee Expenses," which Humberger had filed for 1995. Humberger's gross income for 1995 was $36,000, but the court made an adjustment of $10,400 for these expenses. Thus, for purposes of computing Humberger's gross income for child support the court used the figure of $25,600. We hold that it was error for the magistrate to deduct these expenses, and therefore reverse the magistrate's ruling and remand for further proceedings.

Section 6(a)(2) of the Guidelines clearly does not apply to the present case. That section was written to provide business deductions exclusively for persons who earn their income in a proprietary position, whether it be in a "sole proprietorship, partnership or closely held corporation." I.C.S.G. § 6(a)(2). Humberger's occupation as an electrician in no way meets that criteria as he does not operate his own business nor is he self-employed. Rather, Humberger testified that in 1995, he was an employee of Wheeler Electric for part of the year, and that he worked for Quality Electric for the remainder of the year. He testified that he was an employee of Wheeler Electric again in 1996. Humberger further testified he was a member of the International Brotherhood of Electric Workers, and that his employers paid his retirement benefits to the union. Therefore, because Humberger is not self-employed, but rather is a wage earner, he is not allowed to deduct work-related expenses, and his gross income should be calculated pursuant to I.C.S.G. § 6(a)(1).

We therefore remand this case and direct the magistrate to recalculate Humberger's gross income by adding in the work-related expenses previously deducted. His gross income should be based on wages received without a reduction.

## IV.

## CONCLUSION

We hold that the magistrate correctly determined Hall to be voluntarily unemployed, but abused its discretion in determining her child support obligation based upon a job she held for one summer. We therefore vacate the magistrate's finding that Hall could earn $7.00 an hour for 50 weeks per year, and remand for further proceedings.

We further hold that the magistrate abused its discretion in deducting work-related expenses from Humberger's gross income. Thus, we reverse the magistrate's decision in this regard and remand for a recalculation of Humberger's adjusted gross income.

Because of the mixed result, no attorney fees or costs are awarded to either party.

Chief Justice TROUT, Justices SCHROEDER, WALTERS and KIDWELL, concur.