40 P.3d 86

STATE of Idaho, Plaintiff–Respondent,

v.

Rexann D. BARKER, Defendant–Appellant.

No. 27744.

Supreme Court of Idaho,
Boise, December 2001 Term.

Jan. 17, 2002.

Molly J. Huskey, Acting State Appellate Public Defender, Richard J. Hansen, Deputy State Appellate Public Defender, Boise, for appellant. Richard J. Hansen argued.

Hon. Alan G. Lance, Attorney General; T. Paul Krueger, II, Deputy Attorney General, for respondent. T. Paul Krueger, II, argued.

EISMANN, Justice.

Rexann D. Barker appeals the district court's order denying her motion to suppress evidence discovered during a search of her apartment pursuant to a waiver of Fourth Amendment rights given by her live-in boyfriend as a condition of his parole. We affirm the order of the district court.

## I. FACTS AND PROCEDURAL HISTORY

John Tate had been convicted and imprisoned for possession of a controlled substance. In 1997 he was paroled, and, as a condition of his release on parole, he waived his Fourth Amendment rights. Tate was being supervised on parole in Canyon County, but he stopped reporting to his parole officer in October 1998. Tate's parole officer went to Tate's last reported residence in Canyon County in an attempt to contact him, but he was unable to locate Tate. He noticed that Tate's cars were no longer parked at the residence. He also checked an automobile detailing business that Tate had opened and discovered that the business was closed and the equipment had been removed. The parole officer spoke with Tate's brother, who was also on parole. Tate's brother stated he would try to find Tate, but later stated that he was unable to do so.

On November 19, 1998, Tate's parole officer submitted to the parole commission a report alleging that Tate had violated his parole by failing to report to his parole officer, by failing to maintain employment, and by quitting his employment without permission. A warrant was issued for Tate's arrest for absconding supervision.

During the morning of Wednesday, December 10, 1998, the parole officer learned from Ada County narcotics officers that they had been surveilling a residence in Boise and that Tate had been seen in and around that residence on different dates. During the

early afternoon of the same day, the parole officer obtained the assistance of the narcotics officers and went to the residence in Boise, which was an apartment being leased by Barker.

Upon arriving at Barker's apartment, the parole officer saw Tate standing by a Corvette parked at the side of the apartment. He walked up to Tate and asked where he had been. Tate answered that he had been at the apartment for a couple weeks. The parole officer then arrested Tate.

A pickup with its engine running was parked in front of the Corvette. The parole officer asked Tate who owned the pickup, and Tate stated that it belonged to the neighbor. The parole officer asked the neighbor who owned the pickup, and he stated that it belonged to Tate. The parole officer went to the pickup, turned it off, and took the keys. On the key ring he discovered a key to the Corvette and a key to Barker's apartment.

The parole officer and narcotics officers then went to the apartment and contacted Barker. In response to their questions, she stated that Tate did not live at her apartment, but he had been there off and on. After concluding that he had sufficient information to believe that Tate was living at Barker's apartment, the parole officer decided to search the apartment pursuant to Tate's waiver of his Fourth Amendment rights. He asked the narcotics officers to assist in the search.

One of the narcotics officers searched the master bedroom in the apartment. He noticed that there was male and female clothing hanging in the closet and that the clothing appeared to be separated, with the female clothing on one side and the male clothing on the other. He also saw male footwear in the closet. On a counter in the master bedroom located just outside the adjoining bathroom, the officer found a black or dark-colored fanny pack. He set the fanny pack on the bed, and a drug dog being handled by another officer alerted to the pack.

The officer who had found the fanny pack then left the bedroom and contacted Barker, who stated that she owned the fanny pack. He returned to the bedroom, opened the fanny pack, and discovered methamphetamine. He also discovered in the fanny pack a vehicle title with both Tate's and Barker's names on it.

On January 7, 1999, charges were filed against Barker for possession of the methamphetamine found in the fanny pack. She was arrested and, after a preliminary hearing, was bound over to answer in the district court. She filed a motion to suppress, which was heard on May 20, 1999. The district court found that Tate was residing in Barker's apartment on December 10, 1998, and that the search was reasonable pursuant to his waiver of his Fourth Amendment rights. It therefore denied Barker's motion to suppress. She ultimately pled guilty to possession of methamphetamine, reserving her right to appeal the denial of her motion to suppress.

Barker's appeal was initially heard by the Court of Appeals. It issued a decision holding that the search of the fanny pack violated Barker's Fourth Amendment rights because the State had not shown that Tate owned or had joint access or control over it. It therefore reversed the denial of Barker's motion to suppress and vacated her judgment of conviction. We granted the State's petition for review. In cases that come before us on a petition for review of a Court of Appeals decision, this Court gives serious consideration to the views of the Court of Appeals, but directly reviews the decisions of the district court. *Humberger v. Humberger,* 134 Idaho 39, 995 P.2d 809 (2000). This Court will not set aside the district court's findings of fact unless they are clearly erroneous. *Id.* As to questions of law, this Court exercises free review. *Id.*

## II. ANALYSIS

Warrantless searches are *per se* unreasonable, and therefore unconstitutional, unless they are authorized by a recognized exception to the warrant requirement. *State v. Johnson,* 110 Idaho 516, 716 P.2d 1288 (1986). One such exception is properly given consent. *Id.* When the State seeks to justify a warrantless search based upon consent, it is not limited to proof that the consent was given by the defendant. *Id.* It may show

that the consent came from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected. *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). The common authority of the third party does not rest upon the law of property. *Id*. The State need not show that the third party had a property interest in the premises or effects searched. Rather, the common authority rests upon the joint access or control of the property searched. As explained by the United States Supreme Court in *Matlock:*

> The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Id*. at 171, n. 7, 94 S. Ct. at 993, n. 7, 39 L.Ed.2d at 250, n. 7 (citations omitted). The State has the burden of proving that consent has been given and that the person giving the consent had actual or apparent authority to do so. *Id.; State v. Branch*, 133 Idaho 215, 984 P.2d 703 (1999).

■ Barker does not challenge on appeal the district court's finding that Tate was residing with her at the apartment on December 10, 1998, and that he possessed common authority over the apartment sufficient to consent to the search. She does challenge, however, the district court's finding that Tate's waiver of his Fourth Amendment rights authorized the search of the apartment. Barker argues that the evidence does not show that Tate's waiver of his Fourth Amendment rights constituted a consent to search his residence or, if it did, that it extended to any residence other than his residence in Canyon County.

■ The standard for measuring the scope of a consent to search is that of objective reasonableness. *Florida v. Jimeno*, 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991).

Tate's parole officer testified without objection that Tate waived his Fourth Amendment rights as a condition of being released on parole. Barker did not offer any evidence that Tate had limited the scope of that waiver. In fact, she did not even argue that issue to the district court. Barker simply argued in the district court that the search had exceeded the scope of any consent given by Tate as a condition of his parole because the evidence did not show that Barker's apartment was Tate's residence.

Tate was in prison for possessing drugs. As a condition of parole, he waived his Fourth Amendment rights. Since the Fourth Amendment specifically mentions houses as being protected by its provisions, it is objectively reasonable to conclude that such waiver constituted a consent to search any place where Tate may reside. Therefore, the district court correctly held that the scope of Tate's waiver included consent to search his residence, wherever that residence may be. Because Tate was residing with Barker at her apartment, the consent to search extended to Barker's apartment.

■ Barker also argues that Tate's consent to search could not extend to the fanny pack because the officers knew before the search that it belonged to Barker. The authority to consent to a search is not derived from the law of property (e.g., ownership), but is based upon common authority over the property to be searched. *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). That common authority rests upon the mutual use of the property by persons generally having joint access or control over it for most purposes. *Id*.

■ Because both Tate and Barker occupied the master bedroom, Tate had common authority over the bedroom sufficient for him to consent to a search of that room. His consent to search could not extend to items in the bedroom over which he had no common authority, however. When searching that room pursuant to Tate's consent, the officers could search any item in the bedroom if they had reasonable suspicion that Tate owned, possessed, or controlled the item. *United States v. Davis*, 932 F.2d 752 (9th

Cir.1991). The circumstances need not indicate that the item was obviously and undeniably owned, possessed, or controlled by Tate. *Id.* When searching a residence pursuant to the consent of only one of the occupants, the officers are not required in all instances to inquire into the ownership, possession, or control of an item when ownership, possession, or control is not obviously and undeniably apparent. *Id.* If the officers do inquire, they are not necessarily bound by the answer given. *Id.* The test is whether, under the totality of the circumstances, the officers had a reasonable suspicion that the item was owned, possessed, or controlled by the occupant who consented to the search.

Barker's statement that she owned the fanny pack is not determinative of the issue of whether or not the officer could search the fanny pack. As stated above, authority to consent to a search is not based upon having a property right in the item to be searched. It is based upon having authority over that item. Even if the officer believed that Barker owned the fanny pack, that fact would not necessarily preclude Tate having joint possession or control of it. Furthermore, the officers had reason to doubt Barker's credibility. When initially contacted by the officers, Barker stated that Tate visited her apartment off and on but he was not living there. Prior to searching the fanny pack, however, the officers were aware of facts indicating that Tate was residing at the apartment. That evidence included the facts that Tate appeared to have moved from his Canyon County residence and had closed his business in Canyon County, narcotics officers had at different times previously seen him in and around Barker's apartment, he had two vehicles parked at her apartment and a key to the apartment on his key ring, a vehicle owned by Tate's roommate at his prior residence was parked in the garage at the apartment, Tate stated he had been staying there for a couple weeks, and there were men's clothing and shoes in the master bedroom closet.

We hold that under the totality of the circumstances the officer had reasonable suspicion to believe that Tate had common authority over the fanny pack. Tate was on parole for the charge of possession of a controlled substance. Prior to absconding from supervision, he had submitted a urine sample to his parole officer that tested positive for a controlled substance. His parole officer could certainly reasonably believe that Tate had resumed using controlled substances. The fanny pack was located in the bedroom which was occupied jointly by Tate and Barker. It was sitting on a counter near the adjoining bathroom, where it was readily available. There was nothing about its location or appearance that would indicate that it was owned, possessed, and controlled exclusively by Barker. A drug dog alerted to the fanny pack, and there is no evidence that the officer had any reason to believe that Barker was using controlled substances. Under these facts, the officer could reasonably have suspected that Tate had at least joint possession or control of the fanny pack. We therefore affirm the order of the district court denying Barker's motion to suppress the controlled substance found in the fanny pack.

## III. CONCLUSION

The State met its burden of showing that Tate had consented to the search of his residence when he waived his Fourth Amendment rights as a condition of parole and that under the totality of the circumstances the officer had reasonable suspicion that Tate had at least joint possession or control of the fanny pack. Accordingly, we hold that the district court did not err in denying Barker's motion to suppress.

Chief Justice TROUT, and Justices SCHROEDER, WALTERS and KIDWELL CONCUR.