**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket Nos. 38816 & 38839**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2012 Opinion No. 26** |
| Plaintiff-Appellant, | ) | |
| | ) | **Filed: May 2, 2012** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| LARRY M. ROBINSON, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Minidoka County. Hon. Jonathan P. Brody, District Judge.

Order granting motion to suppress evidence, <u>affirmed</u>.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Clayne S. Zollinger, Rupert, for respondent.

_____

PERRY, Judge Pro Tem

The State of Idaho appeals from the district court's order granting Larry M. Robinson's motion to suppress evidence. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

Gregory John Daigneau is Robinson's nephew. In 2010, Daigneau was sentenced for driving without privileges and placed on misdemeanor probation. Daigneau met with the misdemeanor probation officer assigned to monitor his case and signed a probation agreement in which he acknowledged that, during the time of his probation, he waived his "Fourth Amendment rights to Search and Seizure, based upon a reasonable request" of any probation or police officer. This waiver included Daigneau's "entire residence, vehicles, outbuildings and curtilages." The probation agreement required Daigneau to submit to urine testing and to not frequent or be present where controlled substances were used. On a registration form, Daigneau listed his physical address as Robinson's home and listed the names of four individuals that

1

resided there. Subsequently, Daigneau tested positive for the presence of controlled substances and failed to appear for scheduled urinalyses and appointments with his probation officer. Given these failures and knowledge of Daigneau's history of drug use, Daigneau's probation officer suspected that Daigneau was violating terms of his probation agreement.

On August 2, 2010, police officers observed a vehicle in front of Robinson's home. The vehicle was registered to a felon with an outstanding warrant for his arrest for a probation violation stemming from a 2007 charge of possession of a controlled substance. The officers saw an individual flee from the vehicle, but were unable to locate the wanted felon. The following day, Daigneau's probation officer requested the assistance of police to help her conduct a visit at Robinson's home where Daigneau was residing because she suspected Daigneau was violating terms of his probation.

The visit to Robinson's home was generally described by probation and police officers at the preliminary hearing and hearing on Robinson's subsequent motion to suppress evidence as follows. Upon arrival to Robinson's home, Daigneau's probation officer, who was accompanied by two other probation officers and several police officers, observed that the wanted felon's vehicle was parked there. Not knowing whether the wanted felon was in Robinson's home, the probation officers asked the police to secure the location. One police officer went to the back of Robinson's home while another knocked on Robinson's door. The officer who went to the back heard a door shut in the back bedroom and went to inform the officer at Robinson's door.

When Daigneau's girlfriend answered the door, the officers asked for Daigneau. As Daigneau's girlfriend turned around to retrieve Daigneau, the officers entered. One officer proceeded to conduct a protective sweep of every room of Robinson's home, including Robinson's bedroom at the back of the home that included an attached bathroom. While the officer conducted the sweep, Daigneau was brought out of a bedroom, separate from Robinson's bedroom, to the front area of the home and sat on a couch with his girlfriend. The probation officers then entered Robinson's home. Daigneau's probation officer talked with Daigneau as he sat on the couch. Another woman, a friend of Daigneau's girlfriend, entered the home. At some point, both women asked to use the restroom, were given permission to do so, and both used the bathroom accessed through the back bedroom instead of the bathroom in the front area of the house.

The officer who conducted the sweep found no other persons. To conduct the probationary search, the same officer accompanied a probation officer to the back bedroom. Not seeing any drug paraphernalia in plain sight, the probation officer opened a nightstand beside Robinson's bed and discovered drug paraphernalia. Another probation officer discovered the wanted felon in Robinson's bathroom in a cupboard under the sink. After the wanted felon was removed from the area, a probation officer and police officer continued to search the back bedroom and discovered additional drug paraphernalia in a metal stein on top of a dresser. The officers were told that the bedroom being searched was Robinson's, not Daigneau's, and the search was called off until a search warrant could be obtained.

After the visit to Robinson's home, the state charged Robinson with possession of a controlled substance, I.C. § 37-2732(c)(1); harboring a wanted felon, I.C. §18-205; grand theft by possession, I.C. §§ 18-2403 and 18-2407; and being a persistent violator, I.C. § 19-2514. Robinson filed a motion to suppress all evidence obtained during the search of his bedroom and bathroom, as well as evidence obtained upon issuance of a search warrant, on the basis that the search was conducted in violation of his Fourth Amendment rights.

The district court concluded that the search of Robinson's home was unreasonable because it failed to comply with the condition of Daigneau's probation agreement requiring a reasonable request by any probation or police officer before a search could be conducted. The district court also found that, even if the officers complied with the condition, the search of Robinson's bedroom and bathroom exceeded the scope of Daigneau's consent. Accordingly, the district court granted Robinson's motion to suppress evidence. The state filed a motion for reconsideration, which the district court denied. The state appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). For instance, the reasonableness of a given search or seizure is a question of law over which we exercise independent review. *State v. Morris*, 131 Idaho 562, 565, 961 P.2d 653, 656 (Ct. App. 1998). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual

3

conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

The state argues that the district court erred by concluding that the search of Robinson's home was unreasonable under the Fourth Amendment. Specifically, the state asserts that probation searches supported by reasonable suspicion, as in this case, are constitutionally reasonable without regard to any Fourth Amendment waiver contained in a probation agreement. The state further argues that, even if the search was not justified by reasonable suspicion, the search was justified by the Fourth Amendment waiver in Daigneau's probation agreement.

We agree that, in the absence of a Fourth Amendment waiver contained in a probation agreement, a probation officer may conduct a search of a probationer and his or her property if the officer has reasonable suspicion to believe that the probationer has violated a probation condition and the search is reasonably related to the disclosure or confirmation of that violation. *See State v. Klingler*, 143 Idaho 494, 497-98, 148 P.3d 1240, 1243-44 (2006). However, absent such reasonable suspicion, a probation search conducted pursuant to a Fourth Amendment waiver contained in a probation agreement must still pass the test of the Fourth Amendment--reasonableness under all the circumstances. *State v. Pinson*, 104 Idaho 227, 231-32, 657 P.2d 1095, 1099-1100 (Ct. App. 1983). As in the case with other warrantless searches, the state must carry the burden of showing that the search is reasonable. *Id.* at 232, 657 P.2d at 1100.

In ruling on Robinson's motion to suppress, the district court concluded that, pursuant to *State v. Turek*, 150 Idaho 745, 250 P.3d 796 (Ct. App. 2011), the search of Robinson's home was unreasonable because the officers failed to comply with the requirement of a reasonable request contained in Daigneau's probation agreement. In *Turek*, this Court held that the probation condition language "at the request of" required that the probationer be informed of an officer's intent to conduct an impending search prior to the search. *Id.* at 752, 250 P.3d at 803. Here, the district court found that the police entered Robinson's home where Daigneau was residing before speaking with Daigneau, did not encounter him until they awoke him in his bedroom and moved him into the living room, and continued searching the other rooms of the residence while

4

Daigneau's probation officer entered and began informing Daigneau of the search and its purpose. As such, the district court concluded that the search failed to comply with the requirement of a reasonable request because the entire home was searched upon the initial entry by police prior to Daigneau being informed of the search.

The state argues that, even if the officers did not comply with the terms of Daigneau's consent in his probation agreement, the initial entry into Robinson's home by police and probation officers was justified by reasonable suspicion. The state also contends that, irrespective of whether entry was justified based on the consent or based on reasonable suspicion of probation violations, the scope of the area that could be searched included the common areas of the residence, *i.e.*, areas where Daigneau had the right to access. That is, the state asserts that the permissible scope of a reasonable suspicion search is defined by the same criteria as the scope of a consent search. Robinson does not dispute this. We, therefore, will assume, without deciding, that the permissible breadth of a reasonable suspicion search of a residence where a probationer is a co-habitant is defined by the area to which the probationer could effectively consent to a search. In this case, therefore, the pertinent inquiry is whether Daigneau had authority to consent to a search of Robinson's bedroom and bathroom.

A third party may consent to a search, thereby relieving the government of the warrant requirement, as long as such person possessed authority--either actual or apparent--to consent. *United States v. Matlock*, 415 U.S. 164, 171 (1974); *State v. Dominguez*, 137 Idaho 681, 683, 52 P.3d 325, 327 (Ct. App. 2002). Actual authority to consent exists if the third party shares with the defendant common authority over or other sufficient relationship to the premises or effects sought to be inspected. *State v. Brauch*, 133 Idaho 215, 219, 984 P.2d 703, 707 (1999). As the United States Supreme Court explained:

> Common authority . . . rests . . . [upon] mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Matlock*, 415 U.S. at 171 n.7. Accordingly, co-inhabitants assume the risk that one of them may consent to a search of common areas and items. *State v. Johnson*, 110 Idaho 516, 523, 716 P.2d 1288, 1295 (1986). However, that consent extends only so far as common areas and items in the

5

common areas over which the inhabitants share authority. *State v. Barker*, 136 Idaho 728, 731, 40 P.3d 86, 89 (2002).

Alternatively, a third party may be found to have apparent authority to consent to a search when an officer reasonably, even if erroneously, believes, based on the totality of the circumstances known at the time, that the third party possessed authority to consent. *Georgia v. Randolph*, 547 U.S. 103, 109 (2006); *Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990); *State v. McCaughey*, 127 Idaho 669, 674, 904 P.2d 939, 944 (1995); *State v. Reynolds*, 146 Idaho 466, 473, 197 P.3d 327, 334 (Ct. App. 2008). As expressed by the United States Supreme Court, the officer's conduct is "judged against an objective standard: would the facts available to the officer at the moment . . . 'warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises?" *Rodriguez*, 497 U.S. at 188 (quoting *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)). Consequently, the analysis related to a determination of whether a third party had apparent authority to consent to a search of premises is limited to what officers knew prior to a search of such premises. *See State v. Buhler*, 137 Idaho 685, 687-88, 52 P.3d 329, 331-32 (Ct. App. 2002).

With respect to the question of Daigneau's authority to consent to a search of Robinson's bedroom and bathroom, the state argues only that the district court erred because it required the state to prove actual authority by evidence known to officers before the search and did not consider evidence found as a result of the search. For relief, the state asks this Court to reverse and remand to the district court to consider such evidence in making a determination regarding Daigneau's actual authority.

The state is correct that, in *Buhler*, 137 Idaho at 689-90, 52 P.3d at 333-34, this Court determined that the approach adopted by the district court in that case--limiting proof of actual authority to information known to officers before the search in question--was erroneous. To support the argument that the district court here similarly erred by limiting proof of actual authority to information known to officers before the search of Robinson's bedroom and bathroom, the state first points to the following discussion between Robinson's counsel and the district court at the hearing on Robinson's motion to suppress.

> [COURT]      . . . . What about apparent authority. . . ?
> [COUNSEL]  Well, I think that if I recall the testimony, the state has relied a lot on the fact that as they detained the two ladies up front they went back and used that bathroom. The search to that bathroom happened before that

6

happened. That immediately [an officer] went into that back bedroom and at some point in there Mr. Daigneau came out of another bedroom. And I think that it was understood that that was not his bedroom, so I think that based on that you can't bootstrap the fact that these women used the bathroom sometime later. It's whether they know at the time. And there was a bathroom and a kitchen and bedrooms that people were living in and that would be reasonable if that's where they had access. But there was a bedroom and a bathroom attached that was not his bedroom. I think that those facts would prevent any assumption, any apparent authority, to consent. I think that everything that they have is after the fact.

It is clear from this discussion that the district court was questioning Robinson's counsel about apparent authority, not actual authority. And, as explained above, the analysis related to a determination of whether a third party had apparent authority to consent to a search of premises is limited to what officers knew prior to a search of such premises. Therefore, the state's assertion that this discussion supports the argument that the district court erred by limiting proof of actual authority to information known to officers before the search of Robinson's bedroom and bathroom is incorrect.

The state also cites to language used by the district court in its order denying Robinson's suppression motion to support the argument that the district court erroneously limited proof of actual authority to information known to officers before the search of Robinson's bedroom and bathroom. In determining that Daigneau lacked actual authority to consent to such a search, the district court reasoned:

> The absence of locked doors does not mean that Mr. Daigneau had access to these rooms. While it does make it physically easier for him to enter these rooms, it is not uncommon for residents of a home to leave their bedroom doors unlocked. The fact that each bedroom was private and not communal is strengthened by the fact that each bedroom door was shut prior to the search commencing.
> The fact that Mr. Daigneau slept at the residence does not mean that he has the actual authority to authorize the search of the entire residence. The same holds true for the fact that Mr. Daigneau listed the house in question as his residence. The State was aware prior to the search that Mr. Daigneau shared the residence with others. The probation forms list the other residents of the house, police officers on the scene the night before were aware that both [Robinson] and Mr. Daigneau lived at the residence, and the State was aware that Mr. Daigneau did not own the residence.
> From these facts it is conclusive that Mr. Daigneau had actual authority only over his own bedroom and to some extent the common areas of the house. The extent of the search at that time should have been limited to communal areas

7

and Mr. Daigneau's private bedroom. It also must be noted that [one officer] testified that he did not know whose bedroom the back bedroom was.

The State's contention that the master bathroom is communal is based on the observation of the bathroom's use by two females present during the search, the lack of toiletries in the second bathroom, and the fact that [the wanted felon] was in the master bathroom.

These observations were made after the initial search of the residence and the State had no basis prior to the search that the master bathroom was communal. The use of the master bathroom by the two women and [the wanted felon] does not suggest that Mr. Daigneau had access to the bathroom. Also the unique situation at the time may have influenced the womens' choice of which bathroom in the house to use and thus it is hard to determine what the actual pattern of use of that bathroom was in the house under normal circumstances. The Court concludes that the State was not aware of a possible communal nature of the master bathroom prior to conducting the search.

The master bathroom had only one entrance, through the master bedroom. The door to the master bedroom was shut at the time of the search. The only occupant of this private area was [the wanted felon]. This supports the claim that only Mr. Robinson had actual authority over the master bedroom and master bathroom. The State also requested that the court consider Mr. Daigneau's testimony contained in a preliminary hearing transcript. That testimony strongly supports the fact that the bedroom was the defendant's, Mr. Daigneau had no actual authority to allow a search, and it was not a common area.

The State has not presented sufficient evidence that the master bathroom is communal and it is this Court's finding that the master bathroom was private to [Robinson]. As such, Mr. Daigneau had no actual authority to consent to the search of the master bedroom and master bathroom.

The state argues that the district court's statements concerning what officers were not aware of prior to the search of Robinson's home and conclusion that the state had no basis prior to the search to determine that Robinson's bathroom was communal show that the district court erroneously limited proof of actual authority to information know to officers before the search.

We disagree. Upon examination of the entire passage, it is clear that the district court considered what the officers knew after the search began in making the determination that Daigneau did not have actual authority to consent to a search of Robinson's bedroom and bathroom. Specifically, the district court first noted that the absence of a locked door to Robinson's bedroom--which was not known to the officers until after they began their search--did not mean that Daigneau had access to that room. Additionally, the district court noted the officers' observation of the use of Robinson's bathroom by the two women during the search, the lack of toiletries in the second bathroom, and the presence of the wanted felon in

8

Robinson's bathroom. The district court then concluded that use of Robinson's bathroom by the two women and the wanted felon did not suggest that Daigneau had access to the bathroom. The district court also noted that Robinson's bathroom only had one entrance through Robinson's bedroom, the door to Robinson's bedroom was shut at the time of the search, and the only occupant was the wanted felon. While these facts were not known to officers before they searched Robinson's home, the district court determined that they supported the claim that only Robinson had actual authority over the master bedroom and bathroom. The district court further noted that the state requested the consideration of Daigneau's testimony contained in a preliminary hearing transcript. At that hearing, Daigneau testified that he never used the master bathroom when Robinson was not home and only used it when Robinson was home and with Robinson's permission. After considering all of this evidence, the district court found that Robinson's bedroom and bathroom were private to Robinson. Thus, the district court concluded that Daigneau lacked actual authority to consent to the search of Robinson's bedroom and bathroom. The state's assertion that the district court erroneously limited proof of actual authority to information known to officers before the search of Robinson's bedroom and bathroom in making the determination that Daigneau lacked such authority to consent to the search of those rooms is belied by the record.

The state additionally cites to the district court's reasoning in denying the state's motion for reconsideration, although the state concedes that portions of this reasoning do not support the argument that the district court erroneously limited its consideration of evidence of actual authority. At the hearing on the state's motion for reconsideration, the district court concluded:

> As to the issue of the bathroom being communal, the fact other people had access to it or used it does not mean they had actual or apparent authority to consent to a search of it. And there may be there are some facts on both sides, but the court found as a factual matter that the more persuasive set of facts based on the testimony . . . was that that was not a community area of the house and people did not have the right to consent to a search of that, nor could they reasonably assume the probationer had the right even if he used it sometimes. There's a difference between occasional use or use upon specific permission and the right to give permission to search that area. The fact that somebody else has already used it sometime in the past is not the analysis that shows whether something was a communal area of the house over which Mr. Daigneau exercised control and had the right to consent to the search.
> . . . .
> So then there is the question of the community nature of the bathroom, as I mentioned, and the bedroom, and I don't find that homeowners have to lock every

door in their house so as to exclude other people or have an area where they enjoy their privacy rights.

I think in this case there are areas of the home that Mr. Daigneau could consent to the search, theoretically. I think there's a line somewhere, but it was crossed when Mr. Robinson's bedroom was searched and the bathroom.

And I understand there's conflicting evidence but I don't find that's communal. I don't find that there needs to be a door locked. I think that was his bedroom for the factual analysis, so as far as findings of fact go, I would indicate that his bedroom and the bathroom, even if other people had access, was not a community bathroom.

So given that the conclusions of law flow from that then I believe the analysis in the order was correct. And obviously in cases like this, that is factually detailed with areas of law that depend a lot on the facts, I mean, obviously, there's room for disagreement, and that's normal.

But, I have considered the facts the state presented in terms of other people having access to the bathroom items found and I would accordingly deny the motion to reconsider the court's previous decision on the motion to suppress.

The state has not shown through the decision on the motion to reconsider that the district court erroneously limited proof of actual authority to information known to the officers before the search of Robinson's bedroom and bathroom.

We conclude that the district court's factual finding that Robinson's bedroom and bathroom were private to Robinson was supported by substantial evidence and, therefore, accept that finding. Accordingly, because Daigneau's actual authority to consent to a search of Robinson's home extended only so far as common areas and items in the common areas over which the inhabitants of Robinson's home shared authority, the district court did not err by concluding that Daigneau lacked actual authority to consent to a search of Robinson's private bedroom and bathroom. The state does not challenge the district court's determination that Daigneau lacked apparent authority to consent to such a search. We will not remand to the district court, as the state requests, only to consider information that the district court already considered in making the determination that Daigneau lacked actual authority to consent to a search of Robinson's bedroom and bathroom.

## IV.

### CONCLUSION

Even assuming that Daigneau's probation officer had reasonable suspicion to believe that Daigneau had violated a probation condition, or that the reasonable request condition in Daigneau's probation agreement was not violated, the state has failed to show that the district

10

court erred by concluding that Daigneau did not possess the requisite authority to consent to a search of Robinson's bedroom and bathroom. Therefore, the district court's order granting Robinson's motion to suppress evidence is affirmed.

Chief Judge GRATTON and Judge LANSING, **CONCUR.**