**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 48207**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed:  December 14, 2021** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| CHELSI LYN URIAS, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Jefferson County.  Hon. Stevan H. Thompson, District Judge.

Judgment of conviction for possession of methamphetamine, affirmed; order denying motion to suppress, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Chelsi Lyn Urias appeals from the district court's judgment of conviction for possession of methamphetamine.  Idaho Code § 37-2732(c)(1).  Urias argues that the district court erred when it denied her motion to suppress.  For the reasons set forth below, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

This case arose after a parole officer, Officer Alboucq, made a supervisory residence check of a parolee, Bryce Amos, who lived at Urias's home and who, as condition of his parole, was required to submit to searches of his person and property.  Officer Alboucq went to Urias's address with two Idaho State Patrol officers, where he knocked on the front door and received no response despite seeing movement inside the house.  Officer Alboucq then approached the backyard where

1

children were playing and asked if Amos was in the house. They confirmed that he was and the children led Officer Alboucq inside the house.

Officer Alboucq met Amos in the living room, where Officer Alboucq was informed that Urias and her father also lived in the residence. Amos told Officer Alboucq that: (1) Urias's father resided in the back bedroom; (2) Urias was currently in the shower; and (3) Amos slept on the living room couch. Officer Alboucq was skeptical of Amos's statement that he slept on the couch because there were no blankets or pillows around the couch and a backpack near the couch was determined to belong to someone else.

Officer Alboucq performed a walk-through of the home, first knocking on the room that Amos indicated belonged to Urias's father. After receiving no answer, Officer Alboucq proceeded to the basement, where he saw from the base of the stairs an open bedroom with a bong that appeared to contain methamphetamine residue lying on the floor. Officer Alboucq walked through the room and observed another methamphetamine bong on an end table. Returning upstairs, Officer Alboucq asked Amos if he had used drugs in that bedroom. Amos admitted to using drugs in the bedroom and confirmed that he was living with a girl in the residence whom Officer Alboucq presumed to be Urias. Officer Alboucq then contacted his supervisor and requested permission to search the house, which was granted.

Officer Alboucq and one of the ISP troopers searched the downstairs bedroom. In addition to the bongs in plain view, the search revealed a small baggie with methamphetamine residue and additional items of drug paraphernalia, including a syringe loaded with methamphetamine. Based on these items, the State charged Urias with felony possession of a controlled substance.

Urias moved to suppress the evidence found during the search of the bedroom, arguing that the warrantless search violated her Fourth Amendment rights. Specifically, Urias asserted that Amos's Fourth Amendment waiver did not extend to Urias and that since Amos was staying on the couch on a temporary basis, he lacked authority to consent to a search of the entire residence. The district court denied the motion, finding that it was reasonable for Officer Alboucq to believe that Amos had access to and control over areas outside the living room, including Urias's bedroom.

Urias pled guilty to possession of methamphetamine, reserving her right to appeal the denial of her motion to suppress. Urias timely appeals.

2

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Urias argues that the district court erred in denying her motion to suppress. Specifically, Urias argues that Amos lacked actual or apparent authority to consent to a search of her bedroom and, therefore, his Fourth Amendment waiver did not provide a basis for the search.

Unreasonable searches and seizures are prohibited by the Fourth Amendment to the United States Constitution. U.S. CONST. amend. IV. Warrantless searches are per se unreasonable unless conducted under a recognized exception to the warrant requirement. *State v. Barker*, 136 Idaho 728, 730, 40 P.3d 86, 88 (2002). Consenting to a search is a well-recognized exception to the warrant requirement, and Idaho law has made it clear that probationers can consent to a search of all their property as a condition of probation. *State v. Hansen*, 151 Idaho 342, 345, 256 P.3d 750, 753 (2011). A probationer's consent to search as a condition of probation constitutes a waiver of Fourth Amendment rights. *Id*. The burden is on the State to show that the consent exception applies. *Id*. at 346, 256 P.3d at 754.

The person consenting to a search must have either actual authority to consent to a search or authority that is reasonably apparent. *Id*. Actual authority to consent to a home search rests upon "mutual use of the property by persons generally having joint access or control for most purposes." *Id*. (quoting *United States v. Matlock*, 415 U.S. 164, 171 n.7 (1974)). A warrantless search can still be upheld if the person consenting does not actually have authority as long as the police officer reasonably believes that the person giving consent has the authority to do so. *Hansen*, 151 Idaho at 346, 256 P.3d at 754. The search is lawful as long as the officer has

3

reasonable suspicion of the person's ownership, possession, or control. *State v. Garnett*, 165 Idaho 845, 850, 453 P.3d 838, 843 (2019); *Barker*, 136 Idaho at 731-32, 40 P.3d at 89-90. "The test is whether, under the totality of the circumstances, the officers had reasonable suspicion that the item was owned, possessed, or controlled by the occupant who consented to the search." *Id*. at 732, 40 P.3d at 90. An officer is not bound by information provided by the occupant at the time of the search. *See id*.

As noted, Urias argues that Amos lacked authority to consent to a search of the bedroom where the methamphetamine was found. Urias asserts that the information known to the officers at the time of the search, including the fact that Amos said he was staying on the couch, did not give rise to reasonable suspicion that he had access to and control over the bedroom.

Applying the reasonable suspicion standard set out in *Barker* and *Garnett*, Officer Alboucq had reasonable suspicion that Amos had joint access and control with respect to the bedroom searched. Officer Alboucq was aware from Idaho Department of Correction supervision notes that Amos lived in the home for an extended period of time, up to six months, and was told that Amos was "living with a girl," which he reasonably understood to mean that Amos and Urias were in a dating relationship. Given this information, Officer Alboucq discounted Amos's statement that he slept on the couch. In addition, there were no blankets or pillows around the couch indicating Amos had been sleeping on the couch long-term, and a backpack in the vicinity of the couch belonged to someone else. Further, there was no barrier to Amos's access to the bedroom, and he admitted being in the room and using drugs there. Under the totality of the circumstances, Officer Alboucq had reasonable suspicion that Amos had access and control of the bedroom such that the waiver of his Fourth Amendment rights applied to the search of the bedroom. The district court did not err by denying Urias's motion to suppress.

## IV.

## CONCLUSION

The district court did not err in finding that it was reasonable for the officers to believe that Amos had access to and control over Urias's room where the methamphetamine was found. Therefore, the search was valid incident to Amos's Fourth Amendment waiver. Consequently, we affirm Urias's judgment of conviction and the district court's denial of her motion to suppress.

Chief Judge HUSKEY and Judge LORELLO **CONCUR**.

4