39 P.3d 631

Stephen BROWNING, Plaintiff–
Respondent,

v.

Sherry BROWNING nka Sherry Ellison,
Defendant–Appellant.

No. 26492.

Supreme Court of Idaho,
Rexburg, September 2001 Term.

Dec. 31, 2001.

Wright & Johnson PLLC, Idaho Falls, for appellant. David A. Johnson argued.

Weinpel, Woolf & Combo, Idaho Falls, for respondent. Marc J. Weinpel argued.

SCHROEDER, Justice.

This is a divorce case between Stephen Browning (Stephen) and Sherry Browning, now known as Sherry Ellison (Sherry), concerning spousal support maintenance, child support, and the enforcement of the decree.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

The parties were married August 4, 1979. Two children were born during the marriage: Timothy James, born March 31, 1982, and Nathaniel Michael, born March 4, 1986.

Sherry was working for Mountain Bell when the parties married, but she quit her job when Timothy was born. The parties agreed that she would stay home to care for the children. However, she again began working outside the home in 1993 as a bookkeeper for a school lunch program. At the time of trial she still worked part-time for the lunch program during the school year, earning $7.95 per hour or approximately $6,000 per year. She also worked as a customer service clerk at Albertson's, working approximately 27 hours a week at $5.45 per hour or approximately $7,800 per year. She planned to begin a full-time, two-year course at Eastern Idaho Technical College in accounting beginning in January of 1999. Upon completion of the program she could expect to earn about $1,300 per month to start and up to $2,000 per month after two or more years of experience. Full-time attendance at school would require her to quit her bookkeeping job and work at Albertson's approximately 25 hours per week, earning $649 per month. She anticipated her living expenses to be $1,306 per month, $1,435 including school expenses.

Stephen worked for Lockheed Martin, earning about $46,000 per year or $3,833 per month. The magistrate and the district judge each made different determinations as to his monthly expenses.

On December 3, 1997, Stephen filed a complaint for divorce. Sherry answered the complaint and filed a counterclaim. The parties reached an agreement regarding child custody and visitation with Stephen to have primary custody of the two children. The remaining issues were tried.

On October 16, 1998, the magistrate entered a decree of divorce and ordered Sherry to pay child support of $141 per month. The magistrate ordered Stephen to pay Sherry $600 per month in spousal support beginning January 1, 1999, to continue through December 31, 2001. In making these determinations the magistrate found Stephen's monthly expenses to be about $2,209.00.

Following post-trial motions, Stephen appealed to the district court and Sherry cross-appealed. The district court held that (1) *Humberger v. Humberger,* 134 Idaho 39, 995

P.2d 809 (2000), requires that full-time employment be imputed to a student parent for the purposes of calculating child support; (2) the spousal maintenance paid to Sherry by Stephen should be considered income; and (3) Sherry should only receive spousal maintenance for two years. The district judge determined Stephen's monthly expenses to be about $1,849.00.

Sherry appealed to this Court. Stephen filed a cross-appeal which was dismissed by the Court as untimely. The Court will address those issues raised in Sherry's appeal.

## II.

## STANDARD OF REVIEW WHEN THE DISTRICT COURT ACTED IN AN APPELLATE CAPACITY

*Nicholls v. Blaser*, 102 Idaho 559, 633 P.2d 1137 (1981), sets forth the standard of review when this Court reviews a decision that has been appealed from the magistrate division to the district court.

> We deem the appropriate standard of review at the Supreme Court level to be: The Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings.

*Id.* at 561, 633 P.2d at 1139.

■ "Our standard of review, when we are reviewing a district court decision, acting in its appellate capacity, is to review the record and the magistrate's decision independently of, but with due regard for, the district court's decision." *Walborn v. Walborn*, 120 Idaho 494, 498, 817 P.2d 160, 164 (1991).

## III.

## MAINTENANCE PAID BY STEPHEN SHOULD HAVE BEEN INCLUDED IN CALCULATING SHERRY'S CHILD SUPPORT OBLIGATION.

### A. Standard of Review

■ This Court reviews the magistrate's award of child support under an abuse of discretion standard, *Henderson v. Smith*, 128 Idaho 444, 451, 915 P.2d 6, 13 (1996)(citing *Noble v. Fisher*, 126 Idaho 885, 888, 894 P.2d 118, 121 (1995)), and conducts a multi-tiered inquiry: "(1) whether the trial court rightly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with any legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason." *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

### B. Spousal Maintenance Is Income In Calculating Child Support

The Idaho Child Support Guidelines (I.C.S.G.) are found in Idaho Rule of Civil Procedure 6(c)(6). I.C.S.G. § 6 states the following:

> For purposes of these Guidelines, Guidelines Income shall include: (a) the gross income of the parents and (b) if applicable, fringe benefits and/or potential income; less adjustments as set forth in Section 7.
>
> (a) Gross Income Defined. (1) Gross income. (i) Gross income includes income from any source, and includes, but is not limited to, income from salaries, wages, commissions, bonuses, dividends, pensions, interest, trust income, annuities, social security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, *alimony, maintenance*, any veteran's benefits received, education grants, scholarships, other financial aid and disability and retirement payments ... Child support received is assumed to be spent on the child and is not income to the parent.

(Emphasis added).

■ It appears to be an unusual situation when a non-custodial parent pays child support to the custodial parent while receiving spousal maintenance from the custodial parent. Nevertheless, Rule 6(c)(6) is clear that spousal maintenance is to be included in the calculation of gross income for the purpose of establishing child support payments. Encompassed within this issue is the effect of the spousal maintenance payments on the

calculation of Stephen's gross income. Section 7 of the I.C.S.G. allows for adjustments in the form of a deduction to gross income for spousal maintenance payments prior to the calculation of child support payments. However, the trial court did not adjust Stephen's income for spousal maintenance payments. On remand it will be necessary to make this adjustment.

■ On appeal, the district court included child support payments made by Sherry in the calculation of Stephen's income. Section 6 of the I.C.S.G. provides that "[c]hild support received is assumed to be spent on the child and is not income of the parent." I.C.S.G. § 6(a)(1)(i). Consequently, the district court should not have included child support payments in the calculation of Stephen's gross income, and this adjustment should not be made by the trial court upon remand.

## IV.

## THE IMPUTATION OF EMPLOYMENT TO A FULL TIME STUDENT MUST BE ANALYZED ON A CASE BY CASE BASIS.

■ Following trial in the magistrate division, this Court issued the decision in *Humberger v. Humberger*, 134 Idaho 39, 995 P.2d 809 (2000). In *Humberger*, the Court affirmed the decision of the trial court that the parent who was a full-time student was voluntarily unemployed for purposes of determining child support. That student had a history of employment prior to going to school but did not seek employment while a student. This Court determined that "Section 6(c)(1)(b) of the Guidelines specifically contemplates that a parent student who does not work is voluntarily unemployed and that the parent's potential earned monthly income may be calculated by considering student loans for purposes of child support." *Humberger*, 134 Idaho at 43, 995 P.2d at 813. I.C.S.G. 6(c)(1)(b) states that in calculating potential income "[w]here a parent is a student, potential monthly income during the school term may be determined by considering student loans from any source." The trial court has the discretion to figure a

parent's potential gross income by considering the parent's potential and probable earnings based on work history, occupational qualifications, and prevailing job opportunities and earnings levels in the community. I.C.S.G. § 6(c)(1)(a).

Assuming the ability to be employed, a parent student must have some income attributed to him or her and must be responsible for some allocation of support. *Humberger*, 134 Idaho at 43, 995 P.2d at 813. *Humberger* does not, however, dictate that full-time employment be attributed to a student. The factors in the child support guidelines must be considered, and a decision as to the amount of income attributed to the full-time student must be determined by the exercise of discretion in the application of the guidelines. The trial court should evaluate this issue in light of *Humberger*, which in the exercise of discretion may or may not produce a different result.

## V.

## THE MAGISTRATE DID NOT ERR IN AWARDING SPOUSAL MAINTENANCE FOR SHERRY FOR A TERM OF THREE YEARS.

### A. Standard of Review

■ This Court reviews the trial court's findings "that are the basis for the court's decision as to duration and the amount of spousal maintenance to determine whether there exists substantial and competent evidence in support of these findings." *Wilson v. Wilson*, 131 Idaho 533, 535, 960 P.2d 1262, 1264 (1998) (citing *Mulch v. Mulch*, 125 Idaho 93, 98, 867 P.2d 967, 972 (1994)); *Tisdale v. Tisdale*, 127 Idaho 331, 333, 900 P.2d 807, 809 (Ct.App.1995). This Court may "disregard the trial court's failure to state specific reasons in support of its decision as to the amount and the duration of a spousal maintenance award if 'the reasons clearly appear from the record.'" *Wilson*, 131 Idaho at 535, 960 P.2d at 809 (citations omitted).

### B. Substantial, Competent Evidence Supports The Award Of Spousal Maintenance For Three Years

■ The decision of the magistrate suggests that the award of spousal maintenance

was based primarily on Sherry's attending school full-time. The magistrate found that a delay in Sherry's schooling would prolong her need for alimony and that her paying reduced child support while she was becoming self sufficient would likely cost Stephen less than her paying higher support but taking longer to become self sufficient. Sherry needed approximately two years to complete her training.

The magistrate made findings that support the conclusion that Sherry's circumstances required a third year of spousal maintenance, finding that "Sherry's likely post-divorce expenses for basic needs and child support will be about $1,533." The magistrate found Sherry's current income to be $13,794, or approximately $1,150 per month, and upon graduation she could expect to start at about $1,300 per month and increase to $2,000 per month after two or more years experience. The magistrate ordered spousal maintenance to begin January 1, 1999, and continue through December 31, 2001. It appears that the magistrate extended the spousal payments beyond the finish of Sherry's training to allow her time to establish herself financially. Following the completion of her education, Sherry's expenses will still exceed her income for a period of time, which supports the decision for maintenance beyond the completion of schooling. The magistrate did not state the specific justification for the third year of spousal maintenance payments, but it is sufficiently clear from the record that Sherry will require assistance in meeting her needs after the completion of her education. It was within the discretion of the magistrate to make such an order.

## VI.

### THE MAGISTRATE HAS THE AUTHORITY TO ENFORCE THE PAYMENT OF COMMUNITY DEBTS AND THE EQUALIZATION PAYMENT

Sherry argues that the magistrate should have specified a time for Stephen to make the equalization payment and to pay the community debts.

### A. The Equalization Payment

The magistrate ordered Stephen to pay $4,306.50 to Sherry to equalize the division of community property. Subsequently, the magistrate entered a judgment for the equalization payment and accrued interest, totaling $4,419.55, and ordered that the legal rate of interest would accrue from the date of the judgment until paid.

A judgment is subject to execution at any time within five years after the entry. I.C. § 11–101. A party may request the court to issue a writ of execution if the judgment is not paid. *Id.* It is unnecessary to remand this issue to the magistrate. Sherry may obtain a writ of execution on the judgment if it is not paid.

### B. Satisfaction of Community Debts

On May 18, 1999, Sherry filed a motion to enforce the decree of divorce alleging that Stephen was delinquent in payments to several of the community creditors, that creditors were contacting her personally regarding payment, and that her credit rating was suffering as a result. She sought an order from the magistrate specifying a time frame for Stephen to satisfy the community debts.

The magistrate held a hearing on this and other issues on May 26, 1999, but made no indication of how the court would rule. Subsequently, however, the magistrate entered an order stating, "[f]or reasons addressed by the court at the hearing, the court denies the motion." This appears to be a reference to a statement from the hearing "[b]ut, so I'm saying that where that isn't in the Decree, and the time to move to reconsider the Decree has passed, can the Court now just go back and change the Decree?" There is no direct ruling at the hearing or statement of reasons to deny the motion.

At issue is the ability of the court to enforce its own orders. Stephen was ordered to pay the community debt. At the time of the hearing, Stephen was not paying the community debt. Sherry brought a motion to enforce the magistrate court's order. By dismissing Sherry's motion, the magis-

trate apparently held there was no jurisdiction to do so. Such a ruling is erroneous.

The court has the authority to enforce its order. The method of doing so is within the discretion of the court entering the order. This Court will not prescribe the method of enforcement, only that the magistrate has the authority to enforce its order.

## VII.

## ATTORNEY FEES ON APPEAL

### A. Sherry's Claim

■ Sherry requests attorney fees for this appeal pursuant to I.C. § 32–704. That statute states in relevant part:

The court may, from time to time after considering the financial resources of both parties and the factors set forth in section 32–705, Idaho Code, order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this act and for attorney's fees. . . . .

I.C. § 32–704(3).

It has been the position of the Court to defer to the trial court to make orders under this statute as necessary to provide one party with the means of prosecuting or defending an appeal. *See McNett v. McNett,* 95 Idaho 59, 61–62, 501 P.2d 1059, 1061–1062 (1972); *Tolman v. Tolman,* 93 Idaho 374, 376, 461 P.2d 433, 435 (1969); *Brashear v. Brashear,* 71 Idaho 158, 165, 228 P.2d 243, 247 (1951). "Although a request for attorney fees and costs may be made in an original application to this Court, it is our policy to leave to the trial court 'the making and enforcing of all orders necessary to provide the wife with the means of prosecuting or defending an appeal . . . and to exercise [our] appellate jurisdiction.' " *Thomas v. Worthington,* 132 Idaho 825, 830, 979 P.2d 1183, 1188 (1999) (citing *Wilson v. Wilson,* 131 Idaho 533, 537, 960 P.2d 1262, 1266 (1998) (quoting *Brashear,* 71 Idaho at 165, 228 P.2d at 247)). While this case was on appeal to the district court Sherry made a similar request for attorney fees under I.C. § 32–704(3). The district court found that Sherry had not made a request to the magistrate court for attorney fees to

pursue that appeal. Sherry also failed to provide any citations to the record and/or to supply additional evidence regarding her financial resources or those of Stephen. She did not provide any of the information relevant to the factors delineated in I.C. § 32–705 that are to be weighed by the court in determining whether an award is warranted. In the record before this Court there is similarly no evidence that Sherry presented any type of fee request to the magistrate court or the district court regarding the pursuit of this appeal, or any information necessary for the Court to make a determination regarding the applicability of fees I.C. § 32–704(3). The Court held in *Worthington, supra,* that where a wife did not seek an order from the district judge requiring her husband to pay her attorney fees on appeal, the Court would not award her attorney fees unless such an award was necessary for the Court to exercise appellate jurisdiction. *Worthington,* 132 Idaho at 830, 979 P.2d at 1188. In *Worthington,* the wife had been able to defend the husband's appeal, therefore the Court found that an award of attorney fees on appeal was not necessary to exercise the Court's appellate jurisdiction. The Court will not award attorney fees to Sherry under I.C. § 32–704(3). *See Smith v. Smith,* 131 Idaho 800, 802, 964 P.2d 667, 669 (Ct.App.1998).

### B. Stephen's Claim

■ Stephen claims he should get attorney fees on appeal due to errors made by the magistrate, but cites no authority as to why the Court should grant him fees. "In order to be awarded attorney fees, a party must actually assert the specific statute or common law rule on which an award is based. . . ." *Bingham v. Montane Resource Associates,* 133 Idaho 420, 427, 987 P.2d 1035, 1042 (1999). Stephen has not satisfied this requirement.

## VIII.

## CONCLUSION

The case is remanded to the magistrate court to recalculate spousal maintenance and child support payments consistent with this

opinion. The decision awarding Sherry a third year of spousal maintenance is affirmed. The case is remanded for the magistrate to determine the manner in which it wishes to enforce its judgments and orders regarding Stephen's obligation to satisfy community debts if those obligations have not been satisified. Both parties have prevailed in part. Neither is entitled to costs. This Court will not award attorney fees to either party.

Chief Justice TROUT, Justices WALTERS, KIDWELL, and EISMANN, concur.