# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48254

| | | |
|---|---|---|
| MANDY L. VALENTINE, | ) | |
| | ) | |
| Petitioner-Appellant- Cross Respondent, | ) | Boise, September 2021 Term |
| | ) | |
| v. | ) | Opinion filed: December 8, 2021 |
| | ) | |
| DAN MERRILL VALENTINE, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Respondent-Cross Appellant. | ) | |

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Bannock County. Steven A. Thomsen, Magistrate Judge. Javier Gabiola, District Judge.

The decision of the district court is <u>reversed</u> and <u>remanded</u>.

Hall, Angell & Associates, Idaho Falls, for Appellant. Cory R. Stegelmeier argued.

Schreiner Law, Ammon, for Respondent. Gary L. Schreiner argued.

_____

ZAHN, Justice.

This case concerns the determination of a student parent's income for purposes of computing child support and the determination of parents' respective pro rata shares of childcare expenses. Mandy Valentine ("Mandy") and Dan Valentine ("Dan") divorced in 2015. In 2017, Mandy petitioned the magistrate court for an order modifying the child custody and support provisions of the divorce decree. The magistrate court did not modify the custody provisions in the decree but concluded that substantial and material changes in circumstances existed to justify modifying the child support order. Mandy appealed several aspects of this ruling to the district court. The district court, sitting in an appellate capacity, affirmed in part and reversed in part the magistrate court's order. On appeal to this Court, Mandy challenges the district court's conclusion that her student loans and several other sources of income could be combined to calculate her income under the Idaho Child Support Guidelines. Dan cross-appeals, challenging the district court's conclusion that the magistrate court abused its discretion in calculating his pro rata share

1

of childcare expenses. For the reasons discussed below, we affirm in part, reverse in part, and remand for further proceedings.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Mandy and Dan[1] divorced in May 2015. They share joint physical and legal custody of the two minor children from the marriage, with Mandy having primary physical custody. Shortly after the divorce, Mandy and the children moved to Moscow, Idaho, while Mandy attended the University of Idaho College of Law. At all times relevant to these proceedings, Dan has lived in Blackfoot, Idaho.[2] Under the terms of the divorce decree, Dan is entitled to visitation totaling approximately twenty-eight percent of overnights each year. In addition, the decree provides that Dan is responsible for sixty-percent of "the school related child care [sic] costs [Mandy] incurs."

By all accounts, Mandy's and Dan's post-divorce relationship has been acrimonious. They have significant difficulty communicating with each other, and it appears they have never strictly followed the visitation provisions in the divorce decree, resulting in an ad hoc visitation schedule. Since their divorce, Dan has not availed himself of the full amount of his visitation time. In addition, Dan has not paid Mandy for any childcare costs.

In June 2017, Mandy filed a petition in magistrate court to modify the custody and support terms of the divorce decree.[3] Additionally, as part of those proceedings, she filed a verified motion seeking to have Dan's unpaid share of the childcare costs reduced to a judgment. In her petition, Mandy claimed several substantial and material changes in circumstances justified modifying the decree, including Dan's inconsistent use of his visitation time and failure to pay his share of childcare costs. Dan filed a response and counterclaim, asserting that there had not been substantial and material changes in circumstances or, in the alternative, that the magistrate court should modify the custody schedule in the best interests of the children by limiting the "unrealistic demands" Mandy placed on him. In his response, Dan admitted to not paying his share of childcare costs, but asserted it was because Mandy did not provide him with proper invoices documenting that care, verification of her school-or-work-related need for childcare, or the amount of Idaho

---

[1] Though divorced, the parties still share the same last name. Accordingly, we use their first names for clarity.
[2] Traveling from Blackfoot to Moscow requires a 587 mile drive. Driving Directions from Blackfoot to Moscow, Idaho, GOOGLE MAPS, https://maps.google.com.
[3] Mandy also filed an amended petition to modify the divorce decree; however, it appears that the amended petition only included more allegations of substantial and material changes which are not relevant to the issues in this appeal.

Child Care Program ("ICCP") benefits she received. Neither Dan nor Mandy requested the magistrate court determine whether Mandy was voluntarily underemployed.

The magistrate court considered Mandy's petition during a two-day bench trial in late December 2018. Pertinent to this appeal, the magistrate court received evidence concerning the various student loans, public assistance benefits, and wages Mandy received in the years following the divorce. The magistrate court also received evidence concerning Dan's increased income from a new job. Finally, Mandy presented evidence that the total childcare costs from June 2015 to June 2017 were $9,816.65 and contended that Dan's sixty-percent share of that amount was $5,889. Mandy's documentation of childcare expenses also showed that between August 2015 and April 2016, she received ICCP benefits for childcare costs totaling $3,938, which were paid directly to her childcare provider. Dan did not dispute that he owed Mandy some amount for childcare costs. However, he claimed he could not calculate how much he owed because Mandy's asserted costs did not account for the ICCP benefits she had received.

The magistrate court took the matter under advisement and subsequently issued a written order on March 21, 2019, addressing both the petition to modify and motion to reduce the unpaid childcare costs to a judgment. Then, ostensibly due to a typographical error in its order, the magistrate court issued amended findings of fact and conclusions of law on March 26. In its amended findings of fact and conclusions of law, the magistrate court concluded that Mandy's asserted bases for modifying the child custody order were attributable to the parties' poor co-parenting skills, which were not permanent, material, and substantial changes in circumstances that justified a modification to the custody arrangements. However, the magistrate court concluded that there had been a substantial and material change in circumstances justifying modification of the child support order because both parties' incomes had increased since the divorce. In reaching this conclusion, the magistrate court made factual findings as to each party's "Guidelines Income" pursuant to the Idaho Child Support Guidelines ("ICSG"). The magistrate court calculated Dan's Guidelines Income at $74,000 per year. Neither Dan nor Mandy challenge this finding. Next, the magistrate court determined that Mandy's Guidelines Income was $72,224 per year. It reached this figure by combining: (1) Mandy's wages from a part-time job; (2) the value of her section 8 housing assistance; (3) the amount of her yearly SNAP benefits; (4) a direct Stafford student loan;

3

(5) a "graduate plus" student loan; and (6) "other income."[4] Mandy's student loans accounted for $46,100 of her Guidelines Income. The magistrate court then used the parties' new incomes to calculate a revised child support amount, setting Dan's child support obligation at $764.94 per month. Mandy had requested that Dan's child support obligation to be increased to $901 per month.

Turning to Mandy's motion for Dan's pro rata share of childcare costs to be reduced to a judgment, the magistrate court accepted Mandy's figure for childcare costs, finding that the total bill for the relevant time period was $9,816.65. Next, the magistrate court concluded that the ICCP benefits should be credited towards the total amount of the childcare expenses, not just to the portion attributable to Mandy. Accordingly, the magistrate court subtracted the amount of ICCP benefits ($3,938) from the overall cost ($9,816.65), and concluded that the amount of childcare costs subject to pro rata division between the parties was $5,878.65. Consequently, the magistrate court concluded that Dan's share of the unpaid childcare costs was $3,527.19, rather than the $5,889 Mandy requested he pay.

Mandy subsequently filed a motion for reconsideration, which the magistrate court denied. She then filed a notice of appeal to the district court. Sitting in its appellate capacity, the district court affirmed in part and reversed in part the magistrate court's order modifying the divorce decree. As to the issues raised before this Court, the district court ruled that the magistrate court did not abuse its discretion in modifying the child support order, but it did err in not making an explicit finding that Mandy was voluntarily underemployed before including her student loans in her Guidelines Income. However, the district court concluded such error was harmless because the clear language of the ICSG provided that both gross and potential income may be combined in arriving at a figure for Guidelines Income. Thus, Mandy's Guidelines Income would have been calculated the same even with a finding that she was voluntarily underemployed.

Next, concerning the magistrate court's order on the division of childcare costs, the district court concluded that the magistrate court abused its discretion. It reasoned that the magistrate court's order had the practical effect of allocating a portion of the ICCP benefits to Dan and only the Director of the Department of Health and Welfare had the authority to make and enforce rules regarding eligibility for those benefits. Accordingly, the district court found that the magistrate

---

[4] The magistrate court attributed $14,040 in "other income" to Mandy. On appeal to the district court, Dan conceded, and the district court ruled, that this amount was incorrect. Neither party disputes this ruling on appeal.

4

court abused its discretion because it had not cited any authority in support of its ruling and circumvented the administrative process for awarding ICCP benefits.

Mandy timely appealed, arguing that her student loans were improperly used in calculating her Guidelines Income. Dan cross-appealed, challenging the district court's conclusion that the Mandy's ICCP benefits could not be taken into account when calculating Dan's pro rata share of childcare costs.

## II.     ISSUES ON APPEAL

1. Did the district court err in concluding that the magistrate court's failure to make a finding of voluntary underemployment prior to including Mandy's student loans in the calculation of her Guidelines Income was harmless?

2. Did the district court err in concluding that the magistrate court abused its discretion in considering Mandy's ICCP benefits when calculating the amount of money Dan needed to reimburse her for childcare expenses?

## III.     STANDARD OF REVIEW

In reviewing a district court's intermediate appellate decision, this Court will review the magistrate court record to determine if substantial and competent evidence supported its factual findings, and whether the magistrate court's conclusions of law followed therefrom. *Pelayo v. Pelayo*, 154 Idaho 855, 858–59, 303 P.3d 214, 217–18 (2013) (quoting *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012)). If the district court affirmed the magistrate court, and this Court determines that the magistrate court's findings were properly supported, with conclusions following therefrom, it will affirm the district court as a matter of procedure. *Id.* However, if the district court affirmed the magistrate court and "the findings of fact and conclusions of law made in the magistrate court proceeding . . . [are not] (1) supported by the evidence in the record and (2) consistent with the law . . . [this Court] must reverse the district court." *State v. Dacey*, 169 Idaho 102, __, 491 P.3d 1205, 1210 (2021).

A decision to modify a child support order "is within the sound discretion of the trial court and will not be disturbed on appeal unless a manifest abuse of discretion is shown." *Noble v. Fisher*, 126 Idaho 885, 888, 894 P.2d 118, 121 (1995). This Court evaluates an abuse of discretion under the four-part *Lunneborg* standard, asking whether "the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018) (internal citation omitted).

5

The interpretation of a court rule is a question of law which this Court freely reviews. *E. Idaho Econ. Dev. Council v. Lockwood Packaging Corp. Idaho*, 139 Idaho 492, 495, 80 P.3d 1093, 1096 (2003). The ICSG, set forth in Idaho Rule of Family Law Procedure 126,[5] are court rules promulgated pursuant to Idaho Code section 32-706(5). I.R.F.L.P. 126 (2020); I.C. § 32-706(5). Thus, this Court freely reviews lower court interpretations of the ICSG.

## IV. ANALYSIS

### A. The district court erred in concluding that the magistrate court's failure to make a finding of voluntary underemployment prior to including Mandy's student loans in her Guidelines Income was harmless.

In affirming the magistrate court's order, which included Mandy's student loans in her Guidelines Income, the district court determined that the magistrate erred when it failed to first find that Mandy was voluntarily underemployed. Yet, the district court also concluded that the error was harmless because the clear and unambiguous language of the ICSG provide that Guidelines Income is based on both gross income and potential income and, thus, reasoned that the magistrate court's calculation of Mandy's income would have been the same even with a finding that Mandy was voluntarily underemployed.

Mandy contends that the district court's first conclusion—that the magistrate court erred in not making a finding as to her voluntary underemployment before considering her student loans—was correct. However, she argues that the district court's conclusion that her student loans would inevitably have been considered as part of her Guidelines Income was erroneous. Her primary argument proceeds along two steps: first, she contends the plain language of the ICSG mandate that a voluntarily unemployed or underemployed person's Guidelines Income can only be based on her gross potential income;[6] second, she argues that student loans are potential income and the magistrate court erred in treating her student loans as part of her gross income. She also argues that the district court's interpretation violates public policy.

Dan, in contrast, asserts that Mandy's student loans were properly considered as gross income and could be included in the computation of her Guidelines Income along with her other

---

[5] The ICSG were amended effective July 1, 2021, and are now located at Idaho Rule of Family Law Procedure 120. However, the ICSG in force at the time of the proceedings below were located at Rule 126. Therefore, we reference that rule through this opinion.

[6] The ICSG use the terms "potential income" and "gross potential income" synonymously. *See* I.R.F.L.P. 126(F)(3) (defining "potential income" and providing that a voluntarily unemployed or underemployed parent's child support obligation be based on "gross potential income"). To avoid confusion with gross income, this opinion utilizes the term potential income.

sources of gross income. He also contends that the ICSG unambiguously allow for the addition of both gross and potential income in calculating Guidelines Income and, as such, neither the magistrate court nor the district court erred in arriving at a result in which Mandy's student loans were added to her other sources of income in calculating her Guidelines Income. Finally, he echoes the district court, stating that the failure to make a finding as to Mandy's voluntary underemployment was harmless error because it would not have impacted the outcome of the case.

Resolution of Mandy's issue on appeal hinges on three sub-issues: (1) whether the ICSG allow Guidelines Income to be calculated using both gross and potential income, (2) whether student loans are exclusively potential income under the ICSG, and (3) whether the district court appropriately concluded that the magistrate court's failure to make a finding that Mandy was voluntarily underemployed was harmless error.

1. The ICSG require Guidelines Income to include both gross and, if applicable, potential income.

Mandy's central argument on appeal is that, for parents determined to be voluntarily unemployed or underemployed, Guidelines Income may only be derived from potential income, and gross income cannot be considered. Dan asserts that the ICSG unambiguously require that Guidelines Income be calculated by adding together gross and potential income.

The ICSG "apply to determinations of child support obligations between parents in all judicial proceedings that address the issue of child support[.]" I.R.F.L.P. 126(B). "The basic child support obligation shall be based upon the Guidelines Income of both parents[.]" I.R.F.L.P. 126(J)(1). As to the calculation of Guidelines Income, the ICSG provide:

> For the purposes of these Guidelines, Guidelines Income shall include the gross income of the parents and if applicable, fringe benefits and/or potential income; less adjustments as set forth in subdivision G of this rule.

I.R.F.L.P. 126(F). Gross income is defined to include "income from any source," and the ICSG provide a non-exclusive list of income sources to consider. I.R.F.L.P. 126(F)(1)(a)(i). Potential income is divided into two categories: potential earned income and potential unearned income. I.R.F.L.P. 126(F)(3)(a)–(b). Mandy bases her argument on one portion of the section describing potential earned income, which states "[i]f a parent is voluntarily unemployed or underemployed, child support shall be based on gross potential income." I.R.F.L.P. 126(F)(3)(a).

Mandy argues that the language "shall be based on gross potential income" limits the calculation of Guidelines Income for a voluntarily underemployed parent to that parent's potential

7

earned income. Dan, in contrast, argues that the language of the ICSG is clear and unambiguous, providing a straightforward equation for calculating Guidelines Income that includes both gross and potential income.

The parties' arguments require us to interpret the ICSG. Interpreting court rules is somewhat like analyzing statutes. "We begin with an examination of the literal words of the rule and give the language its plain, obvious and rational meaning." *Kelly v. Kelly*, 165 Idaho 716, 724, 451 P.3d 429, 437 (2019) (quoting *Miller v. Haller*, 129 Idaho 345, 350, 924 P.2d 607, 612 (1996)). Even so, we also held that "while the interpretation of a court rule must always begin with the plain, ordinary meaning of the rule's language it may be tempered by the rule's purpose. We will not interpret a rule in a way that would produce an absurd result." *Id.* (quoting *State v. Montgomery*, 163 Idaho 40, 44, 408 P.3d 38, 42 (2017)). Thus, where we are called upon to analyze any Rule of Family Law Procedure, including the ICSG which are appended to those rules, we will construe the rule in keeping with its purpose, while mindful of the objective of liberally construing and enforcing the rules "in a manner to secure the just, prompt and inexpensive determination of every action and proceeding." *Id.* (quoting I.R.F.L.P. 101).

We agree with the district court's conclusion and hold that the language of the ICSG clearly and unambiguously require Guidelines Income to be based on both gross and, if applicable, potential income. The ICSG expressly provide that Guidelines Income "shall include the gross income of the parents *and if applicable*, fringe benefits and/or potential income[.]" I.R.F.L.P. 126(F) (emphasis added). The use of the conjunction "and" indicates that the calculation of Guidelines Income must include both gross and potential income when the magistrate court imputes potential income to a parent. The ICSG do not, however, mandate that potential income be imputed to a parent. Rather, as we explain in more detail below, the magistrate court must exercise its discretion to determine whether potential income should be imputed to a parent. Thus, while the equation for calculating Guidelines Income unambiguously requires the inclusion of potential income when it has been attributed to a parent, a magistrate court exercises discretion in deciding whether to impute potential income to a parent, and, if so, what amount to impute.

Construing the ICSG as a whole demonstrates that the definition of Guidelines Income in section F does not conflict with the portion of section F(3)(a) that provides "child support shall be based on gross potential income." *See* I.R.F.L.P. 126(F)(3)(a). While Mandy's argument focuses on this excerpted portion of a sentence, the entire sentence must be examined and interpreted: "If

8

a parent is voluntarily unemployed or underemployed, child support shall be based on gross potential income, except that potential income should not be included for a parent that is physically or mentally incapacitated." I.R.F.L.P. 126(F)(3)(a). When the phrase Mandy relies on is examined in the context of the entire sentence and in conjunction with the statement at the beginning section F, it is clear that the entire sentence stands for the proposition that a parent should not be allowed to pay reduced child support by virtue of being voluntarily unemployed or underemployed. The use of the word "shall" simply indicates that in the situation of a voluntarily unemployed or underemployed parent, child support should not only be based on the wages actually earned but also on any potential income imputed to the parent. The last part of the sentence reiterates this interpretation by stating that potential income is "included" as part of the Guidelines Income calculation, not that it is the sole component of the calculation. Therefore, an unemployed or underemployed parent's Guidelines Income is not solely based on potential income. Our interpretation is entirely consistent with the statement at the beginning of section F that Guidelines Income shall include the parent's gross income and, if applicable, potential income.

Our interpretation of section F(3)(a)'s language is reinforced by other provisions of the ICSG, which provide the following guiding principles:

1. The costs of rearing a child are reasonably related to family income, and the proportion of family income allocated to child support remains relatively constant in relation to total household expenditures at all income levels.

I.R.F.L.P. 126(C)(1).

1. Both parents share legal responsibility for supporting their child. That legal responsibility should be divided in proportion to their Guidelines Income, whether they be separated, divorced, remarried, or never married.

2. In any proceeding where child support is under consideration, child support shall be given priority over the needs of the parents or creditors in allocating family resources. Only after careful scrutiny should the court delay implementation of the Guidelines amount because of debt assumption.

I.R.F.L.P. 126(D)(1)–(2). In addition, the ICSG indicates that the intent of imputing potential income is to arrive at an income level that approximates what the parent would earn if not unemployed or underemployed. *See* I.R.F.L.P. 126(F)(1)(a)(ii) ("Compensation received by a party for employment in excess of a 40 hour week shall be excluded from gross income, provided" the excess employment is not an expectation of employment, is in the form of overtime or other part-time employment, is not undertaken for the purpose of affecting a child support obligation,

9

and the party has full time employment at least 48 weeks of the year); I.R.F.L.P. 126(F)(3)(a) ("A parent shall not be deemed under-employed if gainfully employed on a full-time basis at the same or similar occupation in which he/she was employed for more than six months before the filing of the action . . . ."). Thus, the ICSG indicate an intent to determine Guidelines Income based on what a parent would earn if fully employed while also taking into account other, additional sources of income identified in the rule. This is not to say that a magistrate court that concludes a parent is voluntarily underemployed or unemployed must impute potential income in an amount that approximates full employment and then add that amount to sources of gross income to arrive at a total that exceeds full employment. Rather, a magistrate court has the discretion to determine how much, if any, potential income to impute and then add that amount to other sources of gross income to approximate what that parent would earn if fully employed. Because the purpose of child support is to ensure an appropriate standard of living *for the child* based upon both parents' respective earning capacities under the Guidelines, it is to be given priority over the needs of the parents, who share the legal responsibility to financially support the child in proportion to their Guidelines Income.

In reply, Mandy contends that, to the extent the ICSG allow for gross and potential income to be combined together, they only allow potential *unearned* income to be added to gross income. She argues that the ICSG include the mandatory "shall be based on gross potential income" language with respect to potential earned income, but not in the section on potential unearned income. Accordingly, she contends that potential *earned* income is a unique category, which cannot be considered in tandem with gross income because of the mandatory language in that provision. However, we conclude otherwise, as the rule concerning calculation of Guidelines Income draws no distinction between potential earned or unearned income. *See* I.R.F.L.P. 126(F). Accordingly, we conclude that, if the magistrate court imputes potential income to a parent, both potential earned and unearned income must be included in the calculation of Guidelines Income. The district court did not err in concluding that the ICSG require that Guidelines Income include both gross and, if applicable, potential income.

2. Student loans fall within the category of potential income under the ICSG.

The magistrate court did not make a finding as to whether Mandy's student loans were gross or potential income. The district court determined that student loans are classified as potential income under the ICSG. Mandy agrees, noting that the clear language of the ICSG indicates

10

student loans are only potential income, whereas Dan argues that student loans may be considered as either gross or potential income because gross income includes "other financial aid."[7] If student loans can be considered as gross income, the magistrate court did not err when it failed to make a finding that Mandy was voluntarily unemployed or underemployed before including her student loans in its calculation of her Guidelines Income.

The ICSG define gross income as "income from any source," including, but not limited to, "education grants, scholarships, other financial aid and disability and retirement payments to or on behalf of a child." I.R.F.L.P. 126(F)(1)(a)(i). Potential income, on the other hand, does not have a specific definition, but the ICSG provide guidance as to how to determine potential income:

> If a parent is voluntarily unemployed or underemployed, child support shall be based on gross potential income . . . . Determination of potential income shall be made according to any or all of the following methods, as appropriate:
>
> i.      Determine employment potential and probable earnings level based on the parent's work history, occupational qualifications, and prevailing job opportunities and earnings levels in the community.
>
> ii.     Where a parent is a student, potential monthly income during the school term may be determined by considering student loans from any source.

I.R.F.L.P. 126(F)(3)(a).

Dan argues that the plain language of the ICSG provide that financial aid is gross income and that student loans are a form of financial aid; therefore, Mandy's student loans should be considered as gross income. Mandy argues that "financial aid" is not separated with a comma from "disability and retirement payments to or on behalf of a child" and, consequently, it is not a category independent of those sources of income. Interpreting an enactment according to its punctuation is not a favored method of interpretation due to the typically inconsistent adherence to grammatical rules, conventions, and styles by its drafters over time. *See, e.g.*, *Ewing's Lessee v. Burnet*, 36 U.S. 41, 54 (1837) ("Punctuation is a most fallible standard by which to interpret a writing . . . if [the writing's true meaning is apparent] on judicially inspecting the whole, the punctuation will not be suffered to change it.").

---

[7] Mandy also claims that Dan has not challenged the district court's ruling vis-à-vis potential income on appeal. This argument, made in her opening brief, is premature, as Dan asserts in his Respondent's brief that student loans are not potential income. And, to the extent Mandy is arguing that Dan has not cross-appealed the district court's determination that student loans are potential income, he is not required to do so as he does not seek to change the relief granted by the district court below. *See Gordon v. Hedrick*, 159 Idaho 604, 612, 364 P.3d 951, 959 (2015) (explaining that a party is not required to cross-appeal claims that are merely alternative bases on which to affirm the district court).

When "financial aid" is read in context with the rest of the list, it appears that "financial aid" is an independent category from "disability and retirement payments to or on behalf of a child." The sentence following the list of sources of gross income describes how a court should factor payments made from a disabled or retired parent on behalf of a child into its Guidelines Income analysis. I.R.F.L.P. 126(F)(1)(a)(i) ("if benefits are being paid to a child on behalf of a disabled or retired parent . . . ."). Further, the ICSG explicitly provide for an adjustment to an award of child support for disability dependency benefits or retirement dependency benefits paid for the benefit of a child. I.R.F.L.P. 126(H)(5). Thus, reading the rule as a whole, it indicates that "financial aid" is an income source independent of "disability and retirement payments to or on behalf of a child" for purposes of calculating Guidelines Income.

Nevertheless, the term "financial aid" does not clearly and unambiguously encompass federal student loans (or student loans in general, for that matter). Dan contends that the federal student loan program is a financial aid program and, in any event, Mandy received identifiable sums of money, bringing her student loans within the purview of gross income for purposes of the ICSG. Mandy argues that student *loans* are unlike typical forms of financial aid, as they must be repaid with interest, unlike the other enumerated sources of gross income, and no Idaho case supports the notion that they can be considered gross income. Both parties' interpretations are reasonable. On one hand, financial aid may be colloquially understood to include student loans; however, the statutes Dan cites do not say one way or the other that federal student loans are "financial aid." *See* 20 U.S.C. § 1078-2 (delineating "Federal PLUS loans"); 20 U.S.C. § 1078-8 (describing "Unsubsidized Stafford loans"); 20 U.S.C. § 1087a (describing the authority for the federal student loan program). Further, Dan contends that the purpose of imputing potential income under the ICSG is to allow a court to attribute income to a parent who intentionally receives less income than they otherwise would receive if fully employed. With this purpose in mind, he notes the contrast between the definition of "potential" as "existing in possibility but not in fact," with Mandy's receipt of actual money as part of her loans. Dan asserts that because Mandy actually received money from her student loans those loans can be considered as gross income.

In contrast, Mandy's contention that no other enumerated source of gross income must be repaid with interest is also persuasive. However, none of the cases she cites in support of her argument bear on the question at issue here. *See Browning v. Browning*, 136 Idaho 691, 39 P.3d 631 (2001) (addressing whether a voluntarily unemployed student must have full-time

12

employment imputed to them); *Humberger v. Humberger*, 134 Idaho 39, 995 P.2d 809 (2000) (addressing whether imputed income for a voluntarily underemployed student was proper when it was based on projected year-round earnings from a seasonal job); *Jensen v. Jensen*, 128 Idaho 600, 917 P.2d 757 (1996) (addressing whether a child support award was appropriately calculated when the magistrate court did not consider parental income above $70,000). We conclude that the ICSG are ambiguous as to whether student loans fall into the category of "other financial aid" and turn to the rules of statutory construction to resolve the ambiguity.

Mandy asserts that because the ICSG specifically reference student loans as potential income, the term "financial aid" in the gross income list cannot be understood to include student loans. This Court has long utilized the rule of construction *expressio unius est exclusio alterius* or, plainly stated, where an enactment "specifies certain things, the designation of such things excludes all others." *See Idaho Press Club, Inc. v. State Legislature*, 142 Idaho 640, 642, 132 P.3d 397, 399 (2006) (citation omitted). And here, the ICSG specifically reference student loans in discussing how to impute income to a parent who is voluntarily underemployed because they are a student, while omitting student loans from the gross income list. *Compare* I.R.F.L.P. 126(F)(3)(a)(ii), *with* I.R.F.L.P. 126(F)(1)(a).

In light of the above, we hold that student loans may only be considered as potential income under the ICSG. Therefore, we affirm the district court's conclusion that the magistrate court erred in considering Mandy's student loans as part of her Guidelines Income without first making a finding that she was voluntarily underemployed because that finding is a prerequisite to imputing any amount of student loans as potential income under the ICSG.

3. The district court erred in concluding that the magistrate court's error was harmless.

On appeal, Mandy argues that the district court correctly determined that the magistrate court erred in not making a finding as to her voluntary underemployment, but incorrectly determined that such error was harmless. Dan concedes that a finding of voluntary underemployment is a prerequisite to a magistrate court considering student loans as potential income but argues that any error in the magistrate court's order was harmless because it did not affect the outcome of the case.

At every stage of a family law proceeding, courts "must disregard all errors and defects that do not affect any party's substantial rights." I.R.F.L.P. 806. Here, the district court determined that the magistrate court's error in not making a finding as to whether Mandy was voluntarily

13

underemployed before adding the full amount of her student loans to her Guidelines Income was harmless. It reasoned that the ICSG require both potential and gross income to be added together in calculating Guidelines Income; thus, even with a finding that Mandy was voluntarily underemployed, the magistrate court would have arrived at the same calculation for her Guidelines Income. The district court's conclusion appears to rest on two assumptions: (1) that because Mandy was a student, her potential income must be based on her student loans, and (2) that the magistrate court would necessarily impute the full amount of her student loans as potential income if it determined she was voluntarily underemployed. However, we conclude that both of those assumptions are incorrect and that the district court erred in ruling that the magistrate court's error was harmless.

Had the magistrate made a finding that Mandy was voluntarily unemployed or underemployed, that finding should have triggered a potential income analysis that should have altered the outcome in Mandy's case. In the event a parent is voluntarily unemployed or underemployed, the ICSG direct the trial court to determine the parent's potential income according to any or all of the following factors:

i.      Determine employment potential and probable earnings level based on the parent's work history, occupational qualifications, and prevailing job opportunities and earnings levels in the community.

ii.     Where a parent is a student, potential monthly income during the school term *may* be determined by considering student loans from any source.

I.R.F.L.P. 126(F)(3)(a) (emphasis added). The ICSG do not mandate that the trial court automatically impute the full (or any) amount of student loans to a parent who is a student. This is clear from the use of the word "may" in section (F)(3)(a)(ii). Rather, the ICSG direct the trial court to determine the parent's potential income according to certain factors. If the parent happens to be a student, one factor that may be considered is student loans received from any source.

While a finding of voluntary underemployment requires a trial court to impute income, the ICSG do not require "that full-time employment be attributed to a student [parent]." *Browning v. Browning*, 136 Idaho 691, 694, 39 P.3d 631, 634 (2001) (citing *Humberger v. Humberger*, 134 Idaho 39, 995 P.2d 809 (2000)). Even if a student parent is found to be voluntarily underemployed, the ICSG do not require their student loans to be imputed as potential income; instead, the imputation of income to a parent who is also a student "must be analyzed on a case by case basis"

14

by considering the factors articulated in ICSG (F)(3)(a). *Browning*, 136 Idaho at 694, 39 P.3d at 634.

We first note the district court's analysis assumed the magistrate court treated all of Mandy's student loans as potential income. The magistrate court, however, failed to identify whether it was treating the student loans as gross income or potential income. If the magistrate court considered the student loans as gross income, that was error for the reasons previously discussed. If the magistrate court considered the student loans as potential income, it erred because it failed to articulate which factors in the ICSG it relied on for determining potential income.

We next note that the district court incorrectly assumed that the magistrate court would have inevitably considered the full amount of Mandy's loans even if it had found she was voluntarily unemployed or underemployed. However, the language of the ICSG and this Court's precedent indicate that a magistrate court's discretionary decision to impute potential income to a student parent is more nuanced than simply counting the full amount of their student loans in addition to all other sources of gross income. If the magistrate court had found that Mandy was voluntarily underemployed, it would then need to consider the factors under ICSG (F)(3)(a) before imputing potential income to her. Importantly, the magistrate court need not have imputed any amount of Mandy's student loans, or it may have imputed something less than the total loan amount as potential income.[8] Indeed, in most instances the student does not actually receive the full amount of the student loans because the school withholds the amount for tuition. The student parent also usually expends loan funds to obtain books for classes. This was the case for Mandy, who testified her law school tuition was $15,000 or $16,000 a year and that she spent between $500 and $1,000 per year on books. Mandy testified she supported herself during the school year by using approximately one-half of her student loans coupled with her summer income. It is difficult to conceive how the total student loan amount can be imputed to a student if she never received that entire sum, and the portion she did not receive was applied to tuition, rather than for living expenses that benefitted the child. Had the magistrate court considered the factors under ICSG (F)(3)(a), it is by no means guaranteed that the magistrate court would have imputed the full amount of Mandy's student loans to her as potential income. Imputing a higher Guidelines Income

---

[8] We also note that imputing the full amount of student loans to student parents would likely result in an unfair result due to varying tuitions between different schools. For example, if courts always imputed the full student loan amount, a private-school law student would have a higher potential income than a public-school law student simply because the private school student took out more student loans to pay higher tuition fees.

to Mandy than merited by the ICSG's factors and this Court's precedents would affect Mandy's substantial rights because it would reduce Dan's monthly child support obligation. This would also constitute an unmerited windfall for Dan. Accordingly, we hold that the district court erred when it concluded the magistrate court's error was harmless.

Although Mandy contends that adding gross and, when applicable, potential income together will punish parents who defer full-time employment to pursue higher education, our holding today does no such thing. Nor does it punish the other spouse who is fully employed. Rather, we emphasize that the fundamental purpose of the ICSG is to provide support in the best interests of the child. To that end, a trial court must be able to consider the parents' respective circumstances and the multiple income sources available to them in arriving at a proper child support amount that is in the best interests of the children. Rather than punishing parents who seek higher education, we clarify that tabulating a parent's Guidelines Income is not merely a mechanical process, where each source of a parent's income is calculated together. Instead, it is a highly discretionary decision by the trial court heavily dependent on the circumstances of that particular case.

## B. The district court erred in concluding that the magistrate court abused its discretion in its division of childcare expenses.

In calculating Dan's pro rata share of childcare expenses, the magistrate court first subtracted Mandy's ICCP benefits from the total amount of childcare costs, then divided the remaining amount according to Mandy and Dan's respective shares.[9] The magistrate court reasoned that the ICCP benefits Mandy received reduced the total amount of childcare costs because the purpose of those benefits was to reduce the *entire* cost of childcare expenses for the child, rather than to just reduce Mandy's *share* of the childcare expenses. Therefore, the magistrate court ordered the parties to pay their pro rata share out of the amount of childcare expenses incurred after the benefits were taken into account. On intermediate appeal, the district court determined that the practical effect of the magistrate court's order was to effectively award a portion of the ICCP benefits to Dan, and concluded that the magistrate court abused its discretion because it effectively circumvented the administrative process for awarding ICCP benefits. Therefore, the

---

[9] In other words, the magistrate court calculated Dan's share of childcare expenses to be equal to 0.6 x ($9,816.65 - $3,938.00), or $3,527.19.

district court remanded the matter to the magistrate court for a rehearing and recalculation of the childcare expenses Dan owed to Mandy.

On appeal to this Court, Dan argues that the district court erred because the ICSG allows a trial court to divide the childcare costs incurred by either party. Since the ICCP benefits were paid directly to the childcare provider, Dan argues the remaining balance is what was actually incurred, which is the amount subject to pro rata division between the parties. Furthermore, Dan asserts that if Mandy's position is adopted, Dan will be required to pay Mandy more than she actually paid for childcare. Mandy asserts that only the Director of the Department of Health and Welfare may determine who receives ICCP benefits, and that the district court did not err in concluding that the magistrate court abused its discretion in exceeding its authority in that regard. Since Dan did not apply or qualify for ICCP benefits, Mandy argues that no amount of those benefits should accrue in his favor.

The ICSG provide that a "court may order a sharing of reasonable work-related child care expenses *incurred* by either party in proportion to their Guideline Income." I.R.F.L.P. 126(H)(1) (emphasis added). The ICCP is a public assistance program administered by the Department of Health and Welfare. IDAPA 16.06.12.000. The program provides childcare benefits to eligible families. IDAPA 16.06.12.104. ICCP benefits are paid directly to childcare providers. IDAPA 16.06.12.502.04.

The magistrate court did not exceed its authority in calculating Dan's pro rata share of childcare expenses. The ICSG give a trial court discretionary authority to divide childcare expenses actually *incurred* by the parties according to their proportion of Guidelines Income. Black's Law Dictionary defines "incur" as "to suffer or bring on oneself (a liability or expense)." *Incur*, BLACK'S LAW DICTIONARY (11th ed. 2019). To that end, ICCP benefits are effectively a subsidy paid directly to childcare providers, reducing the expense that a parent is required to pay to the childcare provider. While the magistrate court's ruling allowed Dan to benefit from Mandy's successful application for ICCP benefits, it did not purport to determine that Dan was eligible for those benefits or that they should be paid to him. Rather, the magistrate court's ruling simply calculated the actual amount incurred for childcare and divided that amount between the parties on a pro rata basis. Under the ICSG, the magistrate court had the discretion to make that

17

determination and did not exceed its authority in doing so.[10] Therefore, we hold that the district court erred in concluding that the magistrate court abused its discretion in tabulating the amount of childcare expenses subject to division between the parties.

## V.    CONCLUSION

The decision of the district court is reversed and remanded. While the district court correctly interpreted the ICSG to require the inclusion of gross and, if applicable, potential income in the calculation of Guidelines Income, it erred in concluding that the magistrate court's failure to make a finding that Mandy was voluntarily unemployed or underemployed before imputing potential income to her was harmless. Second, the district court erred in determining that the magistrate court abused its discretion in ordering Dan to pay his pro rata share of childcare expenses after subtracting the amount of ICCP benefits Mandy received from the total costs. As both parties have prevailed in part, we decline to award costs on appeal.

Chief Justice BEVAN and Justices BRODY, STEGNER, AND MOELLER **CONCUR**.

---

[10] Moreover, if this Court were to adopt Mandy's argument, it would result in Dan paying Mandy more for childcare expenses than she actually incurred. Neither party disputes that Dan is responsible for 60% of childcare expenses. So, if Mandy's argument is accepted, Dan would be responsible for 60% of $9,816.65, the total cost of childcare, which is $5,889.99. However, Mandy only incurred $5,878.65 in childcare costs after the ICCP benefits were paid to the provider.